**Ruth A. WITTENBERG et al., Plaintiffs,**

v.

**CONTINENTAL REAL ESTATE PARTNERS, LTD–74A et al., Defendants.**

Civ. A. No. 77–1675–G.

United States District Court,
D. Massachusetts.

Oct. 25, 1979.

Landy & Spector, Eatontown, N. J., Albert P. Zabin, Schneider, Reilly, Zabin, Connolly & Costello, Boston, Mass., for plaintiffs.

Riker, Danzig, Scherer & Debevoise, Newark, N. J., Lowenstein, Sandler, Brochin, Kohl & Fisher, Newark, N. J., Price Waterhouse, Gael Mahony, Hill & Barlow, Boston, Mass., H. Peter Norstrand, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER OF DISMISSAL

GARRITY, District Judge.

This is an action for securities fraud brought by purchasers of limited partnership interests in the defendant real estate partnership, Continental Real Estate Partners, Ltd-74A. Named as defendants along with the partnership are its general partner, Continental Real Estate Equities, Inc. (CREE); the controlling stockholder of CREE, Kuras & Co., Inc.; Robert Kuras in his capacity as president and director of both CREE and Kuras & Co.; and the accounting firm of Price Waterhouse and Co. Plaintiffs are citizens of New Jersey and sue individually and derivatively on behalf of the partnership.[1] Their complaint alleges violations of sections 11 and 12 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77*l*, section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5, and the general common law fiduciary duties owed by defendants to the limited partnership. Defendants' motions to dismiss the complaint were referred to a Magistrate, who recommended their denial. Defendants now renew their motions to dismiss by way of objections to the Magistrate's recommen-

---

1. Plaintiffs also sue as representatives of all the limited partners as a class; but no motion to certify such a class has been filed. Whether or not a class could properly be certified does not alter our decision on the motion to dismiss.

dations. We received further memoranda of law on the motions and heard oral argument on October 15, 1979.

The issue common to all motions is whether the defendants' alleged fraudulent transactions or, in the case of the accounting firm, the aiding and abetting of the fraud, are sufficiently related to the initial offering of the partnership opportunity to be "in connection with" the purchase of the partnership shares so as to state a cause of action under section 10(b) and Rule 10b–5.

The partnership was organized in August of 1973, to acquire and hold, for investment, income-producing real properties that would provide the limited partners with a tax sheltered annual cash distribution. On May 11, 1974 plaintiffs purchased 62 limited partnership "units", or shares, as part of a registered public offering preceded by a prospectus dated March 11, 1974. A supplement to the prospectus and a rescission offer were made July 12, 1974. The offering closed July 29, 1974. Sometime thereafter, Kuras & Co. negotiated to purchase all of the outstanding stock of CREE, which purchase was closed on December 31, 1974. Between the time of the closing of the offering in July and the purchase of the general partner by Kuras & Co. in December, no properties were purchased or sold on behalf of the partnership.[2]

Throughout 1975 the defendant general partner and Kuras managed the affairs of the partnership, and in March and April of that year made the two property acquisitions that the plaintiffs allege to have been fraudulently structured to generate excessive acquisition fees for the general partner. Price Waterhouse is named as a de-fendant on the basis of its having certified the partnership's 1975 annual report which was mailed to the limited partners in May, 1976.[3]

The substance of plaintiffs' allegations is that the defendants have breached their fiduciary duty to the limited partners by structuring certain acquisitions so as to create a false, inflated annual return on the investment. Under the terms of the partnership agreement, investors were guaranteed a 7% annual cash distribution and in the event of a shortfall the general partner would make up the difference by advancing funds from the acquisition fees it had earned on the investments. The advances could be repaid only out of cash available for distribution, as that term was defined by the prospectus. By structuring the acquisitions to depict a return much larger than the actual return, defendants could avoid depleting their acquisition fees. And where advances could not be avoided, plaintiffs allege that CREE (and Price Waterhouse by its certifying the result) miscalculated cash available for distribution in order more quickly to repay themselves.

Thus the documentary sources of the misrepresentations relied upon by plaintiffs to bring their claim within the jurisdiction of the securities laws are four: (1) the "Management Compensation" section of the prospectus which describes the 7% cash distribution preference; (2) the "Definitions" section of the prospectus where cash available for distribution is defined; (3) page 9 of the prospectus which holds the general partner to a fiduciary duty of good faith; and (4) as to Price Waterhouse, the 1975 Annual Report which allegedly underestimated expenses and overstated income on

---

**2.** The purchase price for the stock of CREE was $300,000 plus 25% of all fees payable to CREE, under the terms of the partnership agreement, as incentive fees for its property acquisitions. Although the complaint sets December 31, 1975 as the date Kuras & Co. took control of CREE, we rely on the facts set out in the affidavits of Kuras and Glynn, which plaintiffs have not challenged either by memorandum or in open court, and deem the 1975 date to be erroneous. These affidavits show the purchase price to have been paid on December 31, 1974, solely out of Kuras & Co.'s own trea-sury, and before any investment had been made by the partnership or acquisition fees had come due to the general partner, CREE.

**3.** Although Price Waterhouse also prepared the financials that appeared in the 1974 prospectus, plaintiffs admit, in their memorandum in opposition to Price Waterhouse's cross motion to dismiss, that the aiding and abetting which constitute the alleged violation of Rule 10b–5 by that defendant arise only out of the certification of the 1975 Annual Report.

certain properties acquired in that year. Briefly stated, therefore, the substance of plaintiffs' allegations cognizable under the securities laws is only that the representation contained in the prospectus, that the general partner would adhere to a fiduciary duty of good faith, was a misrepresentation in light of the manipulation of the 7% annual return and the cash available for distribution by the defendant Kuras & Co., when it became general partner nine months after the effective date of the prospectus and seven months after the purchases by plaintiffs. Price Waterhouse is alleged to be an aider and abettor in this fraudulent misrepresentation by its certifying the 1975 Annual Report, released in May, 1976.

### Motion of Kuras & Co., Kuras, and CREE to dismiss

■ All defendants raise the initial objection that plaintiffs' allegations of fraud are not pleaded with sufficient particularity to fulfill the requirements of Rule 9(b), Fed.R.Civ.P. The Magistrate found the complaint to be adequate under Rule 9 and we agree with that finding. In an action alleging fraud under the securities laws the plaintiff must give the time, place and content of the misleading statements and state how each statement amounted to a misrepresentation. *Gross v. Diversified Mortgage Investors,* S.D.N.Y.1977, 431 F.Supp. 1080, 1088. Paragraphs 3, 6, 7 and 10 of the amended complaint set out the relevant time periods in which the offering was made, plaintiffs purchased, and defendants took control, and they give the dates and details of the challenged acquisition. Paragraph 10 lists the documents in which the alleged misrepresentations were made and paragraphs 6–13 cite to specific statements in the documents and describe how the defendants' actions are alleged to misrepre-

sent those statements. But while we find the complaint pleads fraud in sufficient detail, it is in examining these very details of the complaint that the court finds the allegations to be deficient in making out a claim under the securities laws.

■ Plaintiffs have failed in their pleadings and memoranda to demonstrate the connection, indispensable as a matter of law, between the defendants' activities and the misrepresentations that are at the heart of the securities law claim. The first of their claims pleads a violation of sections 11 and 12 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77*l*. Sections 11 and 12, on their face, apply only to misrepresentations contained within a prospectus or registration statement. Here, the prospectus became effective March 11, 1974, plaintiffs bought in reliance on the prospectus, May 11, 1974, and the offering to which the prospectus applied closed July 29, 1974. Kuras & Co. took control of CREE on December 31, 1974. The earliest affiliation of the defendants, Kuras & Co. and Robert Kuras, with the general partner CREE thus appears to be November or December of 1974, the months leading up to the purchase of CREE by Kuras & Co. Without an allegation that Kuras & Co. somehow participated in drafting the prospectus, perhaps, for example, in anticipation of taking control of the issuer, the court is left to conclude that these defendants cannot be held responsible for statements made in a prospectus that was drafted and issued at least five months before they took control of the issuer, CREE. Defendants' motion to dismiss the claims under sections 11 and 12 of the Securities Act is therefore granted.[4]

■ Similarly, plaintiffs' allegations fail to state a cause of action under section

---

4. The court is mindful of the suggestion made by plaintiffs' counsel at the hearing on October 15, 1979, that an inference might be drawn from the circumstances surrounding Kuras & Co.'s purchase of CREE that Kuras & Co. would not have purchased had it not devised the alleged scheme to defraud prior to the March offering. The court deems this to be mere speculation, but in granting the motions to dismiss as to any of the claims arising under the securities law, the court does so without prejudice to the plaintiffs' seeking leave to amend their complaint to allege additional facts tying the defendants more closely to the statements of the predecessor director and owners of CREE, provided leave to amend is sought within 20 days of the date of this order.

10(b) and Rule 10b–5. These provisions of the securities laws extend only to frauds and misrepresentations "in connection with" the purchase or sale of the securities. *Blue Chip Stamps v. Manor Drug Stores,* 1975, 421 U.S. 723, 731, 95 S.Ct. 1917, 44 L.Ed.2d 539. Plaintiffs purchased on May 11, 1974, and the offer closed on July 29, 1974. Kuras & Co. took control of the general partner, CREE, on December 31, 1974, five months after any possible plaintiff could have purchased. Moreover, the investments that are the subject of the alleged fraud were not made until March and April of 1975. Thus, the complaint fails to allege that defendants' fraud was contemporaneous to, or in any other way in connection with, the purchase by these plaintiffs.

At best the complaint makes out a claim of postinvestment fraud or mismanagement. In *Birnbaum v. Newport Steel Corp.,* 2 Cir., 193 F.2d 461, 464, *cert. denied,* 1952, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, the court examined the history and purpose of Rule 10b–5 to conclude that it was directed solely at fraud and misrepresentation associated with the purchase or sale of securities and not at fraudulent mismanagement of corporate affairs. The *Birnbaum* rule was applied in *Myers v. American Leisure Time Enterprises, Inc.,* S.D.N.Y.1975, 402 F.Supp. 213, 214, to deny standing to investors who had purchased in 1969, when the events complained of took place in 1974. The same defect in chronology defeats the instant complaint. Although the plaintiffs stand properly within Rule 10b–5's class of purchasers or sellers, their complaint fails to make the additional allegation required by the Rule that defendants' alleged fraudulent acts in 1975 are in some way connected with the purchases in 1974.

In oral argument, plaintiffs' counsel attempted to cure the defect by arguing that the offering was in a sense still nascent at the time Kuras & Co. purchased CREE because no investments had yet been made on behalf of the partnership. They refer to the fraud as an "elaborate scheme" and characterize the misrepresentations as "in connection with the *investment*" (emphasis added), rather than the purchase, as though the offering somehow had a life beyond the actual purchases, and the fraudulent scheme impliedly had roots in the months between the close of the offer and the purchase of CREE.

The court, on the other hand, reads the facts simply as they are set out in the complaint. Plaintiffs purchased their shares on May 11, 1974, relying, they allege, on the issuer's representation that it would adhere to a fiduciary duty of good faith. The alleged breach of fiduciary duty occurred, at the earliest, on December 31, 1974 when the defendants took control of the issuer (CREE) with the supposed intent to make fraudulent acquisitions in March and April of the next year. Nothing in the complaint can be read to tie the alleged fraud of these defendants to representations made by unrelated persons who happened to be in control of CREE at the time the plaintiffs purchased the partnership shares. While the defendants might be charged with breaching a fiduciary duty of good faith in managing the affairs of the partnership after they acquired control, it was the original owners of CREE, not their successors, the defendants, who made the general representations of good faith upon which the plaintiffs state they relied in making their purchase. Because the events of December 1974 through April 1975 are thus not "in connection with" plaintiffs' purchases in May 1974, we grant defendants' motion to dismiss the claims under section 10(b) and Rule 10b–5.

■ Similarly we dismiss the derivative claim on behalf of the partnership contained in count II of the complaint. Not only is there no connection between the public offering of shares in 1974 and the defendants' actions in 1975 after they acquired control of CREE, but there is no allegation that the partnership was a purchaser or seller of the securities. A plaintiff who might otherwise lack standing to sue under Rule 10b–5 cannot circumvent the *Birnbaum* rule by suing derivatively on

behalf of the issuer unless the issuer is itself a purchaser or seller. *Walner v. Friedman,* S.D.N.Y.1975, 410 F.Supp. 29, 32–33.

### Motion of Price Waterhouse to Dismiss

■ The reasoning that compels the dismissal of all securities law claims against defendants CREE, Kuras & Co. and Kuras applies with even greater force to the claims against the defendant accountant, Price Waterhouse. As noted in footnote 2, *ante,* the securities law claim against Price Waterhouse derives solely from the 1975 annual report. Accordingly, plaintiffs have dropped their claims based on sections 11 and 12 of the Securities Act, leaving only the 10b–5 claim to be disposed of here. In support of that claim, plaintiffs argue that by certifying the 1975 annual report, Price Waterhouse aided and abetted the primary fraud of defendants Kuras & Co. and Kuras upon the plaintiff purchasers of the partnership shares.

Clearly plaintiffs cannot sustain a 10b–5 claim on the theory that they were defrauded by the allegedly false financials in the 1975 annual report. The report was received two years after the plaintiffs purchased; plaintiffs have shown neither reliance on the statements contained therein, nor that the statements were made "in connection with" their purchase.[5] Plaintiffs argue instead that Price Waterhouse was an aider and abettor to the primary fraud of the other defendants. In their memorandum they state that in order to establish the aider and abettor liability of Price Waterhouse they will rely on the legal arguments and affidavits submitted to establish the primary fraud of Kuras and Kuras

& Co. Since we have already dismissed plaintiffs' complaint as to the primary fraud on the grounds that it fails to state a claim cognizable under section 10(b) and Rule 10b–5, we need not further consider the additional claim of aiding and abetting that same fraud. Price Waterhouse's motion to dismiss is therefore granted as to counts I and II.[6]

### Pendent State Claims

■ Count III of plaintiffs' amended complaint alleges that defendants have been negligent in managing the partnership and have in other ways violated common law duties owed to the limited partner. In ruling on the motions to dismiss as to counts I and II, we found that the facts alleged in the complaint failed to support the court's jurisdiction under the federal securities laws. However, without deciding the merits of plaintiffs' allegations, we are satisfied that the complaint does recite facts sufficient to justify going forward on a claim of common law breach of duty in the postinvestment management of the partnership.

Having dismissed all of plaintiffs' claims arising under federal law, and because diversity of citizenship is lacking between plaintiffs and one of the defendants, Price Waterhouse,[7] we must now decide whether to exercise this court's pendent jurisdiction over these state law related claims.

■ Pendent jurisdiction is entirely a matter for the court's informed discretion; it is not a plaintiff's right. *United Mineworkers v. Gibb,* 1966, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218. Factors to be weighed in exercising this discretion include

---

**5.** A showing of reliance by the buyer on the alleged misrepresentations of the seller is a necessary condition to a 10b–5 action. *Landy v. Federal Deposit Insurance Corp.,* 3 Cir. 1973, 486 F.2d 139, 152–53; *Janigan v. Taylor,* 1 Cir. 1965, 344 F.2d 781, 785–86, *cert. denied* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120.

**6.** At the hearing on October 15, 1979, we considered and denied defendants' additional motion to strike the affidavits of plaintiffs' attorney, Steven J. Weston. In deciding the motions to dismiss we placed only limited reliance

on the substance of the affidavits; their principal value to the court was in the corporate documents attached by the affiant and not in the general and conclusory arguments contained in the affidavits themselves.

**7.** We rely on the affidavit of Allen I. Young which states that Price Waterhouse is a general partnership and that at least two of the general partners were citizens of New Jersey at the time the suit was filed.

considerations of judicial economy, convenience and fairness to litigants.

It is true that here the state law claims arise out of the same set of operative facts as the now dismissed federal claims. But since no federal issues remain to be considered, this is not an occasion to consider the economies of keeping state claims pendent where they might have facts in common with a remaining federal claim. Rather, the court should consider primarily the fairness to the litigants, the substantiality of the state law question, and the convenience both to the parties and the court. These considerations persuade us not to retain jurisdiction over plaintiffs' remaining claims arising under state law.

■ Where a plaintiff's federal claims have been dismissed early on in the suit, on summary judgment or, as here, on a motion to dismiss, the court should exercise pendent jurisdiction only in exceptional circumstances.[8] *Kavit v. A. L. Stamm & Co.,* 2 Cir. 1974, 491 F.2d 1176, 1180. No such circumstances present themselves here. The parties have presented only so much evidence as was necessary to support or oppose the motions to dismiss; the fruits of their discovery on the federal claims will be of equal value in the prosecution of the state claim; and only CREE and Kuras & Co. are located in Massachusetts, while Mr. Kuras himself is in Michigan and all other parties reside in the New York-New Jersey area. It is true that this case has been in our court for two years, but it appears from the submissions that the efforts of the parties have been devoted to the federal, not the state law claims. We have here made a final disposition of the federal claim; what little time or money has been expended on the state law claim will not be wasted by our decision today not to exercise pendent jurisdiction.

The court has also considered the particular federal claim the plaintiffs have unsuccessfully attempted to raise. The course of judicial precedent in regard to section 10(b) and Rule 10b–5 has been to narrow the class of plaintiffs who have standing in order to avoid putting the federal courts in the position of deciding claims based simply on corporate mismanagement. *See,* e. g., *Schoenbaum v. Firstbrook,* 2 Cir. 1968, 405 F.2d 215, *cert. denied sub nom. Manley v. Schoenbaum,* 1969, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219; *Walner v. Friedman,* S.D.N.Y.1975, 410 F.Supp. 29. By exercising pendent jurisdiction over just such a state claim we would be permitting plaintiffs to do indirectly what they would otherwise have no standing to do directly.

■ Finally the court takes particular notice of the provision in the partnership agreement that requires all disputes relating to partnership affairs to be submitted to arbitration. (Article 20, Articles of Limited Partnership; *see* Glynn aff. ¶ 5). We do not suggest that in declining to exercise pendent jurisdiction the parties should be compelled to arbitrate; our dismissal here deprives us of jurisdiction to order arbitration. However, we attribute to the arbitration provision the same significance Judge Friendly attributed to a similar provision when he reviewed the lower court's exercise of pendent jurisdiction in *Kavit v. A. L. Stamm, supra.* In that case the court affirmed the exercise of pendent jurisdiction but Judge Friendly thought it "a quite different case" where the decision to dismiss the state claims "would enable the defendant to have those claims determined by arbitrators rather than by a court." 491 F.2d at 1179.

Accordingly we decline to exercise pendent jurisdiction over count III, the remaining state law related claims of plaintiffs.[9]

---

8. In *Kavit,* Judge Friendly gave as examples of such circumstances the failure of defendant to call to the attention of the court the weakness of the claim before the court had already invested a substantial amount of time, or the case of a pendent claim that invokes a question of federal policy. 491 F.2d at 1180, n. 4.

9. Should plaintiffs seek leave to amend their complaint as to counts I and II to cure the defects that caused their federal claims to be dismissed, we will of course at that time consider whether they should also be granted leave to reallege the state claims contained in count III.

Plaintiffs' action is hereby dismissed without prejudice to further proceedings in accordance with this order.