**CONSUMERS SAVINGS BANK, CSB Financial Corp. and General Investment Company, Inc., Plaintiffs,**

v.

**TOUCHE ROSS & CO. and Crawford & Company, Defendants.**

**C.A. No. 85–1156–W.**

United States District Court,
D. Massachusetts.

July 12, 1985.

Thomas J. Dougherty, Skadden, Arps, Slate Meagher & Flom, Boston, Mass., for plaintiffs.

S. Beville May, Choate, Hall & Stewart, Gerald F. Rath, Herrick & Smith, Boston, Mass., Mark E. Davidson, Shea & Gould, New York City, for defendants.

## OPINION AND ORDER

WOLF, District Judge.

Upon consideration of the stipulated facts, the evidence presented by affidavit, and the memoranda and oral arguments of counsel, plaintiffs' Motion for Remand is hereby granted. Plaintiffs' request for payment of its costs in connection with this motion, which apparently raises an issue of first impression in the District of Massachusetts, is hereby denied.

\*     \*     \*     \*     \*     \*

This action was brought in February, 1985 by plaintiffs Consumers Savings Bank, CSB Financial Corp. and General Investment Company, Inc. against defendants Touche Ross & Co. ("Touche Ross") and Crawford & Company ("Crawford"). Plaintiffs claim that as a result of defendants' misrepresentations and omissions of material facts they were improperly induced to purchase all of the stock of Herbco Corp. and its wholly-owned subsidiary Kent Insurance Co. Plaintiffs seek relief pursuant to state law and under Section 12(2) of the Federal Securities Act of 1933 (the "Act").

In March, 1985, the defendants removed this action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1441(c). Plaintiffs promptly moved to remand, pursuant to 28 U.S.C. § 1447(c), alleging that complete diversity among the parties is lacking.[1]

Certain facts are not in dispute. Plaintiffs are each citizens of Massachusetts. Touche Ross is a general partnership organized under the laws of the State of New York. As such, it is an unincorporated association. There are several hundred general partners of Touche Ross, a small number of whom are citizens of Massachusetts. None of the eighteen partners who comprise Touche Ross' Board of Directors, which governs the firm, is a citizen of Massachusetts. Nor is Crawford a citizen of Massachusetts.

In opposing the Motion to Remand, Touche Ross contends that the decision of the United States Supreme Court in *Navarro Savings Association v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), directs this Court (1) to disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy; (2) to engage in a functional analysis, focused on agreements between the general partners concerning management of the partnership's assets and control of litigation, to determine whether all general partners of Touche Ross or only those general partners on its Board of Directors are "real parties" to this case; and (3) to find that there is complete diversity between what it claims are the "real parties" to this controversy—plaintiffs, Touche Ross' Board of Directors and Crawford.

As authority for its assertions, Touche Ross relies substantially on two District Court cases applying what those Courts understood to be the Supreme Court's holding in *Navarro* and finding that only the general partners, but not the limited partners, of the limited partnerships in question were the real parties to those controversies for the purpose of determining diversity. *Wroblewski v. Brucher*, 550 F.Supp. 742 (W.D.Okla.1982); *Sixth Geostratic Energy Drilling Program 1980 v. Ancor Exploration Co.*, 544 F.Supp. 297 (N.D.Okla.1982).[2] Touche Ross cites no case in which a partnership has not been held to be a citizen of each state of which a general partner is a citizen. Touche Ross asks this Court, however, to extend the inquiry into the relative roles of the general and limited partners in *Wroblewski* and *Sixth Geostratic* to the relative roles of its general partners and Board of Directors and decide that merely those partners on its Board of Directors, rather than all of its general partners, are real parties to this controversy for diversity purposes.

This Court finds, however, that while the Supreme Court in *Navarro* reaffirmed the principle that jurisdiction should be determined on the basis of the citizenship of real parties to the controversy, it did not modify the uniform precedent, discussed below, establishing that all general partners of an

1. Plaintiffs also asserted that remand was required because the claim based upon Section 12(2) of the Act is not removable. 15 U.S.C. § 77*l*(2). The parties agreed that if the Court found that complete diversity among the parties is lacking, the issue of removal of the Section 12(2) claim would be moot. The Court so finds.

2. Touche Ross also relies on *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 183–84 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), in which the Second Circuit, prior to *Navarro*, held that only the citizenship of the general partners of a New York limited partnership was relevant to determining diversity because, under the applicable New York statute, a limited partner was not a proper party to a suit against the partnership unless the action sought to enforce his rights against or liability to the partnership. The reasoning of *Colonial Realty* was rejected by the Third Circuit in *Carlsberg Resources Corp. v. Cambria Savings and Loan Association*, 554 F.2d 1254 (3d Cir. 1977). Even in the Second Circuit, however, the rule for general partnerships is that for the purpose of determining diversity jurisdiction, a general partnership is a citizen of each jurisdiction of which a partner is a citizen. *Lewis v. Odell*, 503 F.2d 445, 446 (2d Cir.1974); *Coudert Brothers v. Easyfind International, Inc.*, 601 F.Supp. 525, 526 (S.D.N.Y.1985); *Cunard Line Ltd. v. Abney*, 540 F.Supp. 657, 660 (S.D.N.Y. 1982).

unincorporated association are the real parties to an action against the partnership. *New York State Teachers Retirement System v. Kalkus,* (4th Cir.1985), 764 F.2d 1015; *Elston Investment, Ltd. v. David Altman Leasing Corporation,* 731 F.2d 436 (7th Cir.1984); *Trent Realty Associates v. First Federal Savings and Loan Association of Philadelphia,* 657 F.2d 29 (3d Cir.1981); *Hereth v. Jones,* 544 F.Supp. 111 (E.D.Va.1982). Nor did it indicate that a functional analysis is authorized to determine whether the citizenship of all or only some members of an unincorporated association should be considered in determining whether complete diversity exists. It is, therefore, neither necessary nor appropriate for this Court to engage in a functional analysis of the internal arrangements of the Touche Ross general partners or to decide the issues Touche Ross raises concerning the relative roles of its general partners and its Board of Directors.

■ It has long been the law that, for the purposes of diversity, a partnership is a citizen of each jurisdiction of which a partner is a citizen. *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900); *Wittenberg v. Continental Real Estate Partners, Ltd—74A,* 478 F.Supp. 504, 510 (D.Mass.1979), *aff'd,* 625 F.2d 5 (1st Cir. 1980); *Weinfeld v. Paine, Webber, Jackson and Curtis,* 191 F.Supp. 750, 751 (D.Mass. 1961).

*Navarro* did not involve an unincorporated association. Rather, *Navarro* involved an action brought in a state court by a citizen of Texas against a Massachusetts business trust. The trustees invoked the diversity jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders, some of whom were, like Navarro, Texas citizens. *Navarro,* 446 U.S. at 459–460, 100 S.Ct. at 1781. Plaintiff contended that the trust had many attributes of an unincorporated association, that the real parties to the lawsuit were the trust's beneficial shareholders, and that the precedent establishing that an unincorporated associ-

ation is a citizen of each state of which a member is a citizen should be applied to the trust, thus destroying diversity jurisdiction. *Id.* at 461–62, 100 S.Ct. at 1782.

The Court in *Navarro,* however, refused to engage in the effort advocated by the plaintiff to determine whether the trust in question was sufficiently like an unincorporated association to cause the diversity principles applicable to such associations to be applied to the trust. Rather, in identifying the relevant standards for determining diversity, the Court gave decisive weight to the statutory form of the entity involved. It stated:

> We need not reject the argument that [the trust] shares some attributes of an association. In certain respects, a business trust also resembles a corporation. But this case involves neither an association nor a corporation. [This case involves] an express trust, and the question is whether its trustees are real parties to this controversy for purposes of a federal court's diversity jurisdiction.

*Id.* at 462, 100 S.Ct. at 1782. The Court proceeded to analyze the issue presented in the context of the law relating to express trusts. *Id.* at 462, 100 S.Ct. at 1782 *et seq.* It plainly stated that, "[T]he Court never has analogized express trusts to business entities for purposes of diversity jurisdiction." *Id.* at 463, n. 10, 100 S.Ct. at 1783, n. 10. In *Navarro,* the Court demonstrated that it also would not analogize express trusts to unincorporated associations. *New York State Teachers Retirement System,* 764 F.2d at 1018; *Trent,* 657 F.2d at 32.

The focus on the statutory form of the party before it and the refusal to consider alleged analogies to other legal forms of organization displayed by the Court in *Navarro* is consistent with its earlier reasoning in addressing questions concerning the citizenship of unincorporated associations. For example, in determining the citizenship of an unincorporated labor union, the Court declined to decide whether the union was, as a practical matter, indistinguishable from a corporation. *United Steelworkers of America v. R.H. Bouligny, Inc.,* 382

U.S. 145, 147, 86 S.Ct. 272, 273, 15 L.Ed.2d 217 (1965). Rather, the Court in *United Steelworkers* analyzed the jurisdictional issue solely on the basis of the principles applicable to the form in which the union chose to do business, that of an unincorporated association. *Id. See also Great Southern*, 177 U.S. at 456–57, 20 S.Ct. at 693; *Chapman v. Barney*, 129 U.S. 677, 682, 9 S.Ct. 426, 427, 32 L.Ed. 800 (1889); *New York State Teachers Retirement System*, 764 F.2d at 1018.

Although the Court in *Navarro* did, in the context of applying the law relating to trusts, look at issues including title and management of assets and control of litigation, it did not indicate that these questions should be addressed in determining the citizenship of an unincorporated association. To the contrary, the Court in *Navarro* reiterated the standards it had established previously concerning such organizations, stating:

> [U]nincorporated associations remain mere collections of individuals. When the "persons composing such association" sue in their collective name, they are the parties whose citizenship determines the diversity jurisdiction of a federal court. *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456 [20 S.Ct. 690, 693, 44 L.Ed. 842] (1900) (limited partnership association); see *Steelworkers v. Bouligny, Inc.*, 382 U.S. 145 [86 S.Ct. 272, 15 L.Ed.2d 217] (1965) (labor union); *Chapman v. Barney*, 129 U.S. 677 [9 S.Ct. 426, 32 L.Ed. 800] (1889) (joint stock company).

*Id.* at 461, 100 S.Ct. at 1782. Thus, the Court in *Navarro* "took pains to re-assert the strict *Great Southern* rule." *Hereth*, 544 F.Supp. at 114.

Nor has the Supreme Court indicated that, as Touche Ross contends, the *Great Southern* rule is not equally applicable when some general partners agree to delegate some managerial responsibilities to a smaller group of general partners. To the contrary:

> Supreme Court precedent clearly demonstrates that *all* association members' citizenship is relevant to a determination of diversity even if all members do not have managerial responsibility. For instance, union members generally delegate managerial responsibility to their elected leaders, yet each member's citizenship determines the citizenship of the union. *United Steelworkers of America v. R.H. Bouligny, Inc.*, 382 U.S. 145 [86 S.Ct. 272, 15 L.Ed.2d 217] (1965).

*Elston*, 731 F.2d at 439.

It may not be illogical to contend that, as a matter of policy, a large, multi-state general partnership should be treated like a corporation or an express trust for diversity purposes.[3] Since 1789, diversity jurisdiction has existed to protect non-resident litigants from local prejudice and perceived professional inferiority of state courts. Judiciary Act of 1789, ch. 20, §§ 11, 12, 1 Stat. 73, 78–79. *See United Steelworkers*, 382 U.S. at 150, 86 S.Ct. at 274; R. Posner, *The Federal Courts: Crisis and Reform* 142 (1985). Corporations receive the benefit of access to the federal courts on the basis of diversity jurisdiction in all but one or two states. 28 U.S.C. § 1332(c). Yet the present rule concerning unincorporated associations may exclude a large, multi-state partnership like Touche Ross from receiving the benefit of diversity jurisdiction in virtually every state.

It might be argued in opposition to these contentions that since 1789 state courts have been deemed appropriate forums for all actions, including those presenting federal questions. Judiciary Act of 1789, ch.

---

3. Large, multi-state general partnerships apparently are not all, or always, in agreement as to whether they wish to be deemed a citizen of each jurisdiction of which a partner is a citizen. Such organizations have successfully asserted positions contrary to that advocated in this case by Touche Ross in order to defeat allegations that complete diversity existed. *See, e.g., Coopers & Lybrand v. Cocklereece*, 506 F.Supp. 587, 588 (S.D.N.Y.1981) (Coopers & Lybrand "contends that, for the purposes of diversity citizenship, it, as a partnership, is a citizen of each of the states of which its partners are citizens...."); *Wittenberg*, 478 F.Supp. at 510, n. 7; *Weinfeld*, 191 F.Supp. at 751.

20, § 25, 1 Stat. 73, 85. Moreover, in enacting Section 12(2) of the Federal Securities Act of 1933, Congress expressly recognized state courts as fair forums for claims like those at issue in this case by vesting concurrent jurisdiction in such courts and making Section 12(2) claims nonremovable in their own right. 15 U.S.C. § 77*l* (2). The present law concerning the citizenship of general partnerships arguably also provides a level of predictability concerning jurisdiction which is important to both prospective plaintiffs and defendants. Adoption of a rule requiring an analysis of the internal arrangements regarding the relative roles of different general partners in order to decide the citizenship of a general partnership for the purpose of any particular case would inject a potentially time-consuming and expensive litigable issue into the early stage of each case involving a large partnership.

Whatever the relative merits of these competing policy considerations, however, the arguments are misdirected. In considering the United Steelworkers union's claim that it should not be considered a citizen of each state in which a union member was a citizen, the Supreme Court stated in 1965, that "We are of the view that these arguments, however appealing, are addressed to an inappropriate forum, and that pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts." *United Steelworkers*, 382 U.S. at 150–51, 86 S.Ct. at 275. Thus, the Supreme Court has plainly stated its view that any expansion of the rules for determining diversity of citizenship of unincorporated associations should come from the legislative rather than the judicial process. *New York State Teachers Retirement System*, 764 F.2d 1019; *Elston*, 731 F.2d at 439; *Hereth*, 544 F.Supp. at 117.[4]

■ Absent a clear directive to the contrary from the Supreme Court or the Con-

gress, this Court declines to engage in the functional analysis of the internal arrangements concerning management of Touche Ross which it contends would demonstrate that Touche Ross should not be deemed a citizen of Massachusetts in this matter.

\* \* \* \* \* \*

The law as applied to the undisputed facts of this case demonstrates that there is not complete diversity of citizenship among the parties. This action is, therefore, hereby ORDERED remanded to the Superior Court of the Commonwealth of Massachusetts.

---

**4.** The Court notes that the current public debate and proposed legislation concerning diversity jurisdiction is primarily focused on proposals to curtail or abolish access to federal courts on this basis, rather than on measures to enlarge it. *See, e.g.,* R. Posner, *supra,* at 139–47.