## NAVARRO SAVINGS ASSN. *v.* LEE ET AL.

No. 79–465.   Argued March 18, 1980—Decided May 19, 1980

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, WHITE, MARSHALL, REHNQUIST, and STEVENS, JJ., joined.  BLACKMUN, J., filed a dissenting opinion, *post,* p. 466.

*Bernus Wm. Fischman* argued the cause for petitioner. With him on the brief was *Lawrence S. Fischman.*

*James A. Ellis, Jr.,* argued the cause and filed a brief for respondents.

MR. JUSTICE POWELL delivered the opinion of the Court.

The question is whether the trustees of a business trust may invoke the diversity jurisdiction of the federal courts on the basis of their own citizenship, rather than that of the trust's beneficial shareholders.

# I

The respondents are eight individual trustees of Fidelity Mortgage Investors, a business trust organized under Massachusetts law.[1] They hold title to real estate investments in trust for the benefit of Fidelity's shareholders.[2] The declaration of trust gives the respondents exclusive authority over this property "free from any power and control of the Shareholders, to the same extent as if the Trustees were the sole owners of the Trust Estate in their own right. . . ."[3] The respondents have power to transact Fidelity's business, execute documents, and "sue and be sued in the name of the Trust or in their names as Trustees of the Trust."[4] They may invest the funds of the trust, lend money, and initiate or compromise lawsuits relating to the trust's affairs.[5]

In 1971, respondents lent $850,000 to a Texas firm in return for a promissory note payable to themselves as trustees. The note was secured in part by a commitment letter in which petitioner Navarro Savings Association agreed to lend the Texas firm $850,000 to cover its obligation to the respondents. In 1973, respondents called upon Navarro to make the "take-out" loan. Navarro refused, and this action followed. The amended complaint, filed in the United States District Court for the Northern District of Texas, sought approximately $175,000 in damages for breach of contract. Federal jurisdiction was premised upon diversity of citizenship. 28 U. S. C.

---

[1] Fidelity merged into a Delaware corporation in 1978, but Federal Rule of Civil Procedure 25 (c) permits the original parties to continue the litigation. Jurisdiction turns on the facts existing at the time the suit commenced. *Louisville, N. A. & C. R. Co.* v. *Louisville Trust Co.*, 174 U. S. 552, 556 (1899).

[2] Fidelity Mortgage Investors Fifth Amended and Restated Declaration of Trust (hereinafter Fidelity Declaration of Trust), App. A44–A45.

[3] *Id.*, Art. 3.1, App. A49–A50.

[4] *Id.*, Art. 1.1, App. A45.

[5] *Id.*, Art. 3.2, App. A50–A55.

§ 1332.[6]   The complaint asserted—and the parties agree—that Navarro was a Texas citizen and that each respondent was a citizen of another State.   The parties have stipulated, however, that some of Fidelity's beneficial shareholders were Texas residents.

The District Court dismissed the action for want of subject-matter jurisdiction.   416 F. Supp. 1186 (1976).   Concluding that a business trust is a citizen of every State in which its shareholders reside, the court held that the parties lacked the complete diversity required by *Strawbridge* v. *Curtiss,* 3 Cranch 267 (1806).   The Court of Appeals for the Fifth Circuit reversed.   597 F. 2d 421 (1979).   It held that the respondent trustees were real parties in interest because they had full power to manage and control the trust and to sue on its behalf.   Since complete diversity existed among the actual parties to the controversy, the Court of Appeals directed the District Court to proceed to trial on the merits.   We granted certiorari, 444 U. S. 962 (1979), and we now affirm.

## II

Federal courts have jurisdiction over controversies between "Citizens of different States" by virtue of 28 U. S. C. § 1332 (a)(1) and U. S. Const., Art. III, § 2.   Early in its history, this Court established that the "citizens" upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy.   *McNutt* v. *Bland,* 2 How. 9, 15 (1844); see *Marshall* v. *Baltimore & Ohio R. Co.,* 16 How. 314, 328–329 (1854); *Coal Co.* v. *Blatchford,* 11

---

[6] Section 1332 (a)(1) provides:

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ."

In view of our disposition of the case, we need not consider respondents' alternative claim to jurisdiction under 28 U. S. C. § 1331 or their attempt to bring a class action under Federal Rule of Civil Procedure 23.2.

Wall. 172, 177 (1871). Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy. *E. g., McNutt v. Bland, supra,* at 14; see 6 C. Wright & A. Miller, Federal Practice and Procedure § 1556, pp. 710–711 (1971).

The early cases held that only persons could be real parties to the controversy. Artificial or "invisible" legal creatures were not citizens of any State. *Bank of United States v. Deveaux,* 5 Cranch 61, 86–87, 91 (1809).[7] Although corporations suing in diversity long have been "deemed" citizens, see n. 7, *supra,* unincorporated associations remain mere collections of individuals. When the "persons composing such association" sue in their collective name, they are the parties whose citizenship determines the diversity jurisdiction of a federal court. *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U. S. 449, 456 (1900) (limited partnership association); see *Steelworkers v. Bouligny, Inc.,* 382 U. S. 145 (1965) (labor union); *Chapman v. Barney,* 129 U. S. 677 (1889) (joint stock company).

Navarro contends that Fidelity's trust form masks an unincorporated association of individuals who make joint real estate investments. Navarro observes that certain features of the trust's operations also characterize the operations of an association: centralized management, continuity of enterprise, and unlimited duration. Arguing that this trust is in sub-

---

[7] Although overruled in *Louisville, C., & C. R. Co. v. Letson,* 2 How. 497 (1844), *Deveaux* was resurrected by *Marshall v. Baltimore & Ohio R. Co.,* 16 How. 314 (1854). *Marshall* held that an artificial entity cannot be a citizen, but that the persons who "act under [corporate] faculties . . . and use [the] corporate name" are presumed to reside in the State of incorporation. *Id.,* at 328; see *St. Louis & S. F. R. Co. v. James,* 161 U. S. 545, 562 (1896). This view endured until 1958, when Congress amended the diversity statute to provide explicitly that "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Act of July 25, 1958, § 2, 72 Stat. 415 (codified at 28 U. S. C. § 1332 (c)).

stance an association, Navarro reasons that the real parties to the lawsuit are Fidelity's beneficial shareholders.

## III

We need not reject the argument that Fidelity shares some attributes of an association. In certain respects, a business trust also resembles a corporation. But this case involves neither an association nor a corporation. Fidelity is an express trust, and the question is whether its trustees are real parties to this controversy for purposes of a federal court's diversity jurisdiction.[8]

As early as 1808, this Court stated that trustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship. *Chappedelaine* v. *Dechenaux*, 4 Cranch 306, 308. Federal Rule of Civil Procedure 17 (a) now provides that such trustees are real parties in interest for procedural purposes.[9] Yet

---

[8] The dissenting opinion, *post*, at 471–472, and n. 4, 476, n. 7, asserts that Massachusetts law would treat Fidelity as a trust for some purposes and as a partnership for others. Neither the parties nor the courts below addressed these questions of state law. Assuming that the dissent is correct, its observations cast no doubt on our conclusion that Fidelity is a form of express trust. It is black letter law that "[m]any of the rules applicable to trusts are applied to business trusts. . . ." Restatement (Second) of Trusts § 1, Comment *b*, p. 4 (1959). Many others are not. Our task is simply to determine, as a matter of federal law, whether the rules applicable to trustees who sue in diversity fall in the former or the latter category.

[9] There is a "rough symmetry" between the "real party in interest" standard of Rule 17 (a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy. But the two rules serve different purposes and need not produce identical outcomes in all cases. Note, Diversity Jurisdiction over Unincorporated Business Entities: The Real Party in Interest as a Jurisdictional Rule, 56 Texas L. Rev. 243, 247–250 (1978); see 6 C. Wright & A. Miller, Federal Practice and Procedure § 1556, pp. 710–711 (1971). In appropriate circumstances, for example, a labor union may file suit in its own name as a real party in interest under Rule 17 (a). To establish diversity, however, the union

similar principles governed diversity jurisdiction long before the advent of uniform rules of procedure.[10]   In 1870, the Court declared that jurisdiction properly founded upon the diverse citizenship of individual trustees "is not defeated by the fact that the parties whom they represent may be disqualified." *Coal Co.* v. *Blatchford,* 11 Wall., at 175 (mortgage contract). "[T]he residence of those who may have the equitable interest" is simply irrelevant. *Bonnafee* v. *Williams,* 3 How. 574, 577 (1845) (note held in trust for third party). The same rule applies when "the beneficiaries are many." *Dodge* v. *Tulleys,* 144 U. S. 451, 456 (1892) (dictum) (railroad trust deed).[11]

In *Bullard* v. *Cisco,* 290 U. S. 179, 189 (1933), the trust beneficiaries were "numerous and widely scattered" investors who had conveyed certain bonds to a committee formed by a protective agreement. The agreement did not use trust terminology. Nevertheless, the Court held that the "rights, powers and duties expressly assigned" to committee members

---

must rely upon the citizenship of each of its members. *Steelworkers* v. *Bouligny, Inc.,* 382 U. S. 145 (1965).

[10] The Court never has analogized express trusts to business entities for purposes of diversity jurisdiction. Even when the Court espoused the view that a corporation lacked citizenship, *Bank of United States* v. *Deveaux,* 5 Cranch, at 91, Mr. Chief Justice Marshall explained that the doctrine had no bearing on the status of trustees.

"When [persons suing by a corporate name] are said to be substantially the parties to the controversy, the court does not mean to liken it to the case of a trustee. A trustee is a real person capable of being a citizen . . . , who has the whole legal estate in himself. At law, he is the real proprietor, and he represents himself, and sues in his own right."

[11] *Thomas* v. *Board of Trustees,* 195 U. S. 207 (1904), cited by Navarro, is not to the contrary. The Court there considered the Board of Trustees of a state university. Rejecting the contention that the Board was analogous to a corporation, the Court held that jurisdiction depended upon the citizenship of the individual trustees. *Id.,* at 215–217. The Court did not discuss the nature of the "trust" or the possible existence of beneficiaries.

"necessarily" made them trustees. *Ibid.* The agreement gave the committeemen "full title to the deposited bonds," and it defined "the control and power of disposal which the trustees were to have over them." *Ibid.* Refusing to analogize the committee to a collection agency, the Court concluded that "[t]he beneficiaries were not necessary parties and their citizenship was immaterial." *Id.*, at 190.[12]

*Bullard* reaffirms that a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.[13] The trustees in this case have such powers. At all relevant times, Fidelity operated under a declaration of trust that authorized the trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees. Respondents filed this lawsuit in that capacity. They seek damages for breach of an obligation running to the holder of a promissory note held in their own names. Fidelity's 9,500 beneficial shareholders had no voice in the initial investment decision. They can neither

---

[12] The actual issue in *Bullard* was not citizenship but amount in controversy. The claims of certain individual bondholders were too small to satisfy the $3,000 jurisdictional threshold then in effect. The trustees, on the other hand, held legal title to unpaid bonds and coupons worth about $350,000. 290 U. S., at 180–181.

[13] The relative simplicity of this established principle, see *post*, at 475, is one of its virtues. "It is of first importance to have a definition . . . [that] will not invite extensive threshold litigation over jurisdiction," although the resulting "differentiations of treatment . . . appear somewhat arbitrary." American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts 128 (1969). "Jurisdiction should be as self-regulated as breathing; . . . litigation over whether the case is in the right court is essentially a waste of time and resources." Currie, The Federal Courts and the American Law Institute, Part I, 36 U. Chi. L. Rev. 1 (1968). The analysis proposed by the dissent, *post*, at 475–476, see *post*, at 467–472, and n. 4, could present serious difficulties for district courts called upon to determine questions of diversity jurisdiction.

control the disposition of this action nor intervene in the affairs of the trust except in the most extraordinary situations.[14]

We conclude that these respondents are active trustees whose control over the assets held in their names is real and substantial. That the trust may depart from conventional forms in other respects has no bearing upon this determination. Nor does Fidelity's resemblance to a business enterprise alter the distinctive rights and duties of the trustees.[15] There is no allegation of sham or collusion. See 28 U. S. C. § 1359; *Bullard* v. *Cisco, supra,* at 187–188, and n. 5. The respondents are not "naked trustees" who act as "mere conduits" for a remedy flowing to others. *McNutt* v. *Bland,* 2 How., at 13–14; see *Browne* v. *Strode,* 5 Cranch 303 (1809). They have legal title; they manage the assets; they control the litigation. In short, they are real parties to the controversy. For more than 150 years, the law has permitted trustees who meet this standard to sue in their own right,

---

[14] The shareholders may elect and remove trustees; they may terminate the trust or amend the Declaration; and they must approve any disposition of more than half of the trust estate. Fidelity Declaration of Trust, Arts. 2.2, 6.7, 8.2, 8.3, App. A47, A67, A79–A80. No other shareholder action can bind the trustees. *Id.,* Arts. 3.1, 6.2, App. A49, A64.

The dissent believes that these limited powers of intervention establish a "pervasive measure of [shareholder] control . . . over the trustees' actions. . . ." *Post,* at 476. Therefore, the dissent would hold that Fidelity is a citizen of each State in which any of its 9,500 shareholders resides. But this form of "control" does not strip the trustees of the powers that make them real parties to the controversy for purposes of diversity jurisdiction. See *supra,* at 459, 463–465. Indeed, their authority over trust property—short of partial liquidation—is expressly made "free from any power and control of the Shareholders, to the same extent as if the Trustees were the sole owners of the Trust Estate in their own right. . . ." Fidelity Declaration of Trust, Art. 3.1, App. A49–A50.

[15] That business trusts may be treated as associations under the Internal Revenue Code, *Morrissey* v. *Commissioner,* 296 U. S. 344 (1935), is simply irrelevant.

without regard to the citizenship of the trust beneficiaries. We find no reason to forsake that principle today.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE BLACKMUN, dissenting.

A reader of the Court's conclusory opinion might wonder why this heavily burdened tribunal chose to review this case. Most assuredly, we did not do so merely to reaffirm, *ante,* at 462, Mr. Chief Justice Marshall's ruling from the bench in *Chappedelaine* v. *Dechenaux,* 4 Cranch 306, 308 (1808), to the effect that aliens serving respectively as residuary legatee and representative of an estate, "although they sue as trustees," were entitled to bring a federal diversity action against a Georgia citizen. Rather, I had thought that we granted certiorari to resolve a significant conflict among the Courts of Appeals concerning the question whether the citizenship of a business trust, for purposes of establishing diversity jurisdiction, is determined by looking to the citizenship of its trustees or that of its beneficial shareholders.[1] I believe that the

---

[1] Compare the decision below, 597 F. 2d 421 (CA5 1979), rev'g 416 F. Supp. 1186 (ND Tex. 1976), with *Belle View Apartments* v. *Realty ReFund Trust,* 602 F. 2d 668 (CA4 1979), and *Riverside Memorial Mausoleum, Inc.* v. *UMET Trust,* 581 F. 2d 62 (CA3 1978), aff'g 434 F. Supp. 58 (ED Pa. 1977). See also cases cited in n. 6, *infra,* dealing with an analogous question presented in the context of limited partnerships.

The Court of Appeals' decision in this case also conflicts with a substantial body of recent holdings of Federal District Courts that uniformly have looked to the citizenship of the beneficial shareholders, and not the trustees, in determining the existence of diversity in suits brought by or against common-law business trusts. See *National City Bank* v. *Fidelco Growth Investors,* 446 F. Supp. 124 (ED Pa. 1978); *Independence Mortgage Trust* v. *White,* 446 F. Supp. 120 (Ore. 1978); *Lincoln Associates* v. *Great American Mortgage Investors,* 415 F. Supp. 351 (ND Tex. 1976); *Heck* v. *A. P. Ross Enterprises, Inc.,* 414 F. Supp. 971 (ND Ill. 1976); *Carey* v. *U. S. Industries, Inc.,* 414 F. Supp. 794 (ND Ill. 1976); *Chase*

analysis applied by the Court of Appeals in resolving that question was correct, but in applying that same analysis I would reach a different result. I feel that neither the approach now used by this Court, nor the result it reaches, comports with the Massachusetts law of business trusts, or with the Court's precedents concerning diversity jurisdiction.

## I

The Court recognizes that Fidelity Mortgage Investors, a Massachusetts business trust, "shares some attributes of an association," and that it "also resembles a corporation." *Ante,* at 462. The Court concludes, however, based on its reading of portions of Fidelity's Declaration of Trust, that it is an "express trust." Taken either as a proposition of the general common-law of trusts,[2] or as an interpretation of the Massachusetts law of business trusts, that conclusion is not nearly so automatic and evident as the Court's scant reasoning implies.

In *Hecht* v. *Malley,* 265 U. S. 144 (1924), this Court described the Massachusetts business trust in terms that have

---

*Manhattan Mortgage & Realty Trust* v. *Pendley,* 405 F. Supp. 593 (ND Ga. 1975); *Jim Walter Investors* v. *Empire-Madison, Inc.,* 401 F. Supp. 425 (ND Ga. 1975); *Larwin Mortgage Investors* v. *Riverdrive Mall, Inc.,* 392 F. Supp. 97 (SD Tex. 1975); *Fox* v. *Prudent Resources Trust,* 382 F. Supp. 81 (ED Pa. 1974). An early decision that appears to be in accord with the Court's "express trust" rationale in the present case is *Simson* v. *Klipstein,* 262 F. 823 (NJ 1920).

[2] The leading reference works dealing with the subject of trusts do not include business trusts within their scope:

"Although many of the rules applicable to trusts are applied to business trusts, yet many of the rules are not applied, and there are other rules which are applicable only to business trusts. The business trust is a special kind of business association and can best be dealt with in connection with other business associations." Restatement (Second) of Trusts § 1, Comment *b,* p. 4 (1959).

See also 1 A. Scott, The Law of Trusts § 2.2 (3d ed. 1967).

come to be accepted as the classic definition, see 16A R. Eick-hoff, Fletcher Cyclopedia of the Law of Private Corporations § 8228 (1979):

"The 'Massachusetts Trust' is a form of business organization, common in that State, consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property is divided. These certificates, which resemble certificates for shares of stock in a corporation and are issued and transferred in like manner, entitle the holders to share ratably in the income of the property, and, upon termination of the trust, in the proceeds.

"Under the Massachusetts decisions these trust instruments are held to create either pure trusts or partnerships, according to the way in which the trustees are to conduct the affairs committed to their charge. If they are the principals and are free from the control of the certificate holders in the management of the property, a trust is created; but if the certificate holders are associated together in the control of the property as principals and the trustees are merely their managing agents, a partnership relation between the certificate holders is created. *Williams* v. *Milton,* 215 Mass. 1, 6; *Frost* v. *Thompson,* 219 Mass. 360, 365; *Dana* v. *Treasurer,* 227 Mass. 562, 565; *Priestley* v. *Treasurer,* 230 Mass. 452, 455.

"These trusts—whether pure trusts or partnerships—are unincorporated. They are not organized under any statute; and they derive no power, benefit or privilege from any statute. The Massachusetts statutes, however, recognize their existence and impose upon them, as

'associations,' certain obligations and liabilities." (Footnotes omitted.) [3]   265 U. S., at 146–147.

Based on its reading of Fidelity's Fifth Amended and Restated Declaration of Trust, App. A40, and seemingly unconcerned with considerations of state law, the Court determines that respondents "are active trustees whose control over the assets held in their names is real and substantial." *Ante*, at 465. That the trustees' control over the assets of Fidelity is substantial may be accepted without quarrel. The Court fails to recognize, however, that the Declaration of Trust lodges in the beneficial shareholders substantial control over the actions of these trustees. Article 2.1 of the Declaration provides that the trustees are to be elected at annual shareholder meetings by a majority of the shares voted. App. A47. Article 2.2 provides that trustees may be removed from office, with or without cause, by vote of the majority of the outstanding shares. *Ibid.* Article 6.7 vests in the shareholders two significant powers: the ability to call a special meeting upon the request of not less than 20% of the outstanding shares, and the requirement that any sale, lease, exchange, or other disposition of more than 50% of the trust assets is to be made only upon the affirmative approval of the holders of a majority of the shares. *Id.*, at A67. Most significantly, Art. 8.2 reserves to the holders of a majority of the shares the right to terminate the trust at any shareholder meeting, and Art. 8.3 gives them the power to amend the Declaration of Trust itself. *Id.*, at A79–A80.

The leading Massachusetts decision concerning the legal nature of a business trust is *Williams* v. *Inhabitants of Milton,* 215 Mass. 1, 102 N. E. 355 (1913). There the court inquired whether personal property held by the trustees of the Boston

---

[3] The current statutory requirements governing voluntary associations under a written instrument or declaration of trust are contained in Mass. Gen. Laws Ann., ch. 182, §§ 1–14 (West 1958 and Supp. 1980).

Personal Property Trust was to be taxed as partnership property or investment trust property. In concluding that the indenture of trust created a true trust, the court observed that the shareholders of the trust were not associated in any way, did not hold meetings, and could not force the trustees to amend or terminate the trust. *Id.*, at 10, 102 N. E., at 358. The court emphasized, however, that the parties' intent to create a trust, rather than a partnership, as evidenced in the declaration of trust, was not controlling. "It is what the parties did in making the trust indenture that is decisive." *Id.*, at 12, 102 N. E., at 359.

In *Frost* v. *Thompson,* 219 Mass. 360, 365, 106 N. E. 1009, 1010 (1914), the court distilled from *Williams* the following test:

> "A declaration of trust or other instrument providing for the holding of property by trustees for the benefit of the owners of assignable certificates representing the beneficial interest in the property may create a trust or it may create a partnership. Whether it is the one or the other depends upon the way in which the trustees are to conduct the affairs committed to their charge. If they act as principals and are free from the control of the certificate holders, a trust is created; but if they are subject to the control of the certificate holders, it is a partnership."

Guided by these principles, the *Frost* court concluded that the "Buena Vista Fruit Company" was a partnership rather than a trust. This conclusion followed from the fact that shareholders representing two-thirds of the outstanding shares had the power to remove any or all of the trustees at any time without cause, to appoint others to fill resulting vacancies, and to terminate the trust. Moreover, shareholders representing a majority of the shares had the power to amend the declaration of trust and bylaws. "These provisions demonstrate that this association is a partnership and not a trust." *Id.*, at 366, 106 N. E., at 1010. Thus, the court concluded

that the trustees could not be sued in an action on a note issued by the Buena Vista Fruit Company.

In a variety of contexts, the Supreme Judicial Court of Massachusetts has continued to observe the line, drawn in *Williams* and in *Frost*, that is based on the relative powers of shareholders and trustees in a business trust.[4] It appears to

---

[4] In *Priestley* v. *Treasurer & Receiver General*, 230 Mass. 452, 120 N. E. 100 (1918), a trust agreement was held to create a partnership relation among the shareholders because they were associated, had a fixed annual meeting, could call special meetings upon the request of the holders of 10% of the shares, were empowered to fill vacancies in the number of trustees, and could remove the trustees and elect others in their place. The shareholders also were given direct powers to control the trustees' management of the trust property. In *Howe* v. *Chmielinski*, 237 Mass. 532, 130 N. E. 56 (1921), a partnership was found to exist among the shareholders, and the trustees were deemed to be their managing agents, despite the fact that legal title to the property stood in the trustees' names. This result followed from the shareholders' reserved powers under the trust agreement to fill vacancies among the trustees, remove them, direct the sale of trust property, and alter or terminate the trust. And where the shareholders of an unincorporated loan company were given the power to elect the company's officers and directors, to remove them for cause, to fill vacancies, to hold annual and special meetings, and to amend or repeal the bylaws, the court concluded that the company's bylaws "left in the shareholders the ultimate power of control of its affairs with the result that the relationship of partnership and not that of a trust was created." *First National Bank of New Bedford* v. *Chartier*, 305 Mass. 316, 321, 25 N. E. 2d 733, 736 (1940). See also *Ryder's Case*, 341 Mass. 661, 664, 171 N. E. 2d 475, 476–477 (1961).

In *Bouchard* v. *First People's Trust*, 253 Mass. 351, 360, 148 N. E. 895, 899 (1925), the court found that an express trust had been created where the arrangement established by a declaration of trust "involve[d] a total want of legal power by the shareholders as to the trust." In that case the shareholders had no power to direct the management of the trust directly or indirectly, and they had no power to select the trustees or to control their conduct. The Federal District Court applied Massachusetts law in *Gutelius* v. *Stanbon*, 39 F. 2d 621 (Mass. 1930), and followed *Bouchard* in holding that a declaration of trust established a pure trust rather than a partnership. Although the trust agreement provided for shareholder meetings at which the trustees were elected, and permitted

me that the powers lodged in the beneficial shareholders of Fidelity—the powers to elect and remove trustees, to vote on major trust investments, to amend the terms of the trust, and to terminate it—clearly dictate that it falls on the partnership side of the line. And those same powers convert the relationship between Fidelity's trustees and shareholders from one of trusteeship to one of agency. Thus, in *Williams*, the court stated: "The person in whose name the partnership property stands in such a case is perhaps in a sense a trustee. But speaking with accuracy he is an agent who for the principal's convenience holds the legal title to the principal's property." 215 Mass., at 6, 102 N. E., at 356. See also *Howe* v. *Chmielinski*, 237 Mass. 532, 534, 130 N. E. 56, 56 (1921).

I do not suggest that this state-law analysis is fully dispositive of the federal jurisdictional question presented here, see n. 7, *infra*, but it certainly is relevant.[5] Moreover, I be-

---

them to terminate the trust at any time, the court deemed it significant that they were not given the right to remove trustees or to amend the declaration of trust. *Id.*, at 625. One must note, however, that every one of the four powers mentioned in *Gutelius*, with two of them lacking in that case, are possessed by the shareholders of Fidelity Mortgage Investors.

The fact that a declaration of trust effectively creates a partnership relation rather than a pure trust has not led the Massachusetts courts to treat the entity as a partnership for all purposes. See *State Street Trust Co.* v. *Hall*, 311 Mass. 299, 41 N. E. 2d 30 (1942), in which it was held that the partnership nature of a real estate trust did not give minority shareholders the right to dissolve the trust at will.

[5] Typically, for example, lower courts faced with the question whether a particular entity is a "corporation" within the meaning of the federal diversity statute, 28 U. S. C. § 1332 (c), have turned to the pertinent provisions of the law of the State under which the entity was organized. See, *e. g., Baer* v. *United Services Automobile Assn.*, 503 F. 2d 393, 394–395 (CA2 1974). In contrast, the Court today evidently has found in our past cases a federal common law of trusts that enables it to ignore state law when the issue presented concerns the threshold question of jurisdiction. Cf. *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, 78–80 (1938).

State law is not of dispositive assistance in resolving the precise question presented in this case because Massachusetts statutory law recognizes an

lieve that it casts very substantial doubt on the Court's major premise, namely, that Fidelity is an "express trust."

## II

Petitioner argues that this case is controlled by the confluence of principles emanating from two of this Court's past decisions, each of which the Court, in its present opinion, essentially relegates to a footnote. The first case, *Morrissey* v. *Commissioner*, 296 U. S. 344 (1935), like *Hecht* v. *Malley*, 265 U. S. 144 (1924), dealt with the tax treatment of a business trust. In holding that such an entity was not an "ordinary trust," the Court observed:

> "In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management and sale of properties; or for dealings in securities or other personal property; or for the production, or manufacture, and sale of commodities; or for commerce, or other sorts of business; where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of

unincorporated business trust as an entity that may itself be sued in an action at law for the debts and obligations incurred by its trustees. Mass. Gen. Laws Ann., ch. 182, § 6 (West 1958); *State Street Trust Co.* v. *Hall*, 311 Mass., at 304, 41 N. E. 2d, at 34. The fact that a business trust has the capacity to sue under the laws of Massachusetts, does not, of course, give it the power to bring a suit on its own behalf in federal court. *Great Southern Fire Proof Hotel Co.* v. *Jones*, 177 U. S. 449, 455 (1900); see also 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3630, pp. 840–841, and nn. 10 and 11 (1975).

the arrangement, seek to share the advantages of a union of their interests in the common enterprise." 296 U. S., at 357.

These distinctions, along with the similarities between a business trust and a corporation, led the Court to conclude that a business trust was an "association," taxable, along with corporations, joint stock companies, and insurance companies, under § 2 (a)(2) of the respective Revenue Acts of 1924 and 1926, ch. 234, 43 Stat. 253, and ch. 27, 44 Stat. 9.

Concluding that *Morrissey* establishes that Fidelity is an unincorporated association, petitioner argues that it follows that this controversy is then controlled by the second case, *Steelworkers* v. *Bouligny, Inc.*, 382 U. S. 145 (1965). In *Bouligny*, a unanimous Court held that an unincorporated labor union's citizenship for diversity purposes could not be determined without regard to the citizenship of its members. Although the holding of *Bouligny* was limited to the diversity treatment of labor unions, the principles it enunciates are unmistakably broad. The Court rejected the invitation of other courts and commentators to eradicate the distinction between the "citizenship" of corporations, on the one hand, and that of labor unions and other unincorporated associations, on the other hand. See *id.*, at 149–150. The Court stated that it was "of the view that these arguments, however appealing, are addressed to an inappropriate forum, and that pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts." *Id.*, at 150–151.

The Court of Appeals in this case recognized the pertinence of *Bouligny* to the problem presented here, but found that case distinguishable. It noted that *Bouligny* is directly applicable only to the situation in which an unincorporated association seeks to establish diversity jurisdiction as an entity. And it adopted the view, earlier suggested in law review com-

mentary,[6] that *Bouligny* did not decide *who* the relevant members are when a court determines the citizenship of an unincorporated association. The Court of Appeals concluded that when an organization has more than one class of members, it is necessary to determine on a case-by-case basis which class comprises the real parties in interest. Focusing its attention on Fidelity's Declaration of Trust, the court held that the trustees were the real parties to this lawsuit because they were designated as having exclusive control of the trust's activities, with the capacity to sue on the trust's behalf and to be sued. See 597 F. 2d 421, 427 (CA5 1979).

I believe that the *approach* of the Court of Appeals in this case was consistent with this Court's prior decisions. And I much prefer it to the simplistic approach the Court now adopts. I am particularly troubled by the Court's intimation that business trusts are to be treated differently from other functionally analogous business associations—partnerships, limited partnerships, joint stock companies, and the like. I fear that, at bottom, the Court's distinction between business trusts and these other enterprises hinges on the locus of title

---

[6] The Court of Appeals, 597 F. 2d, at 427, and n. 6, placed substantial reliance upon the student Comment, Limited Partnerships and Federal Diversity Jurisdiction, 45 U. Chi. L. Rev. 384 (1978). That Comment, in turn, credited the dissenting opinion of Judge James Hunter III, in *Carlsberg Resources Corp.* v. *Cambria Savings & Loan Assn.*, 554 F. 2d 1254, 1262–1266 (CA3 1977), for the development of the real-party-in-interest approach in determining which members count in establishing the citizenship of an unincorporated association. 45 U. Chi. L. Rev., at 402–404.

The *Carlsberg Resources* majority held that the citizenship of a limited partnership is determined according to the citizenship of all its partners. The Second Circuit has adopted the contrary view, that is, that the citizenship of the general partners alone is determinative. See *Colonial Realty Corp.* v. *Bache & Co.*, 358 F. 2d 178, cert. denied, 385 U. S. 817 (1966). I read the Court's opinion in this case as expressing no view on the diversity of citizenship issue that is presented when one of the parties is a limited partnership.

to the trust assets, see *ante,* at 459, and 464–466, a formalistic criterion having little to do with a realistic assessment of the respective degrees of control over the trust's activities that may be exercised by shareholders and trustees.

While I prefer and accept the Court of Appeals' approach to this case, I am persuaded, on that approach, that one cannot ignore the pervasive measure of control that Fidelity's shareholders possess over the trustees' actions taken in their behalf. See Part I, *supra.*[7] That factor, in my view, is the principal distinction between the ongoing business entity at issue here and the trust relationship among certificate holders and the bondholders' committee that was at issue in *Bullard* v. *Cisco,* 290 U. S. 179 (1933), cited and relied upon by the Court, *ante,* at 463–464. Though the question is not free from all doubt, in the light of these circumstances I believe that the citizenship of Fidelity should be determined according to the citizenship of its beneficial shareholders, and that diversity jurisdiction does not exist in this case.[8] I therefore dissent from the Court's holding to the contrary.

[7] The conclusion that the Massachusetts law under which the business trust was created would treat Fidelity as a partnership could lead one to hold that its citizenship is determined with respect to the citizenship of all its shareholder-partners. See *Great Southern Fire Proof Hotel Co.* v. *Jones,* 177 U. S., at 456. Nonetheless, because Fidelity is not a partnership for all purposes, see n. 4, *supra,* I hesitate to give such a characterization of its legal nature controlling weight. It seems preferable to me to treat Fidelity as a form of unincorporated business association, and determine its citizenship according to the real-party-in-interest test utilized by the Court of Appeals. One factor that would seem especially pertinent in applying that test is the conclusion that Massachusetts law would treat the relationship between Fidelity's trustees and shareholders as one of agent to principal. See Part I, *supra.*

[8] The author of the Comment cited in n. 6, *supra,* suggests that determining the real parties in interest in an action involving a business trust is complicated by the fact that no uniform statutory framework clearly defines the relative rights and responsibilities of the trustees and the shareholders. The author notes, however, that certain factors may be relevant to a determination that the shareholders, rather than the trustees, are

I would vacate the judgment of the Court of Appeals and remand this case for consideration of respondents' claimed alternative bases for federal jurisdiction that were rejected by the District Court, but not reached by the Court of Appeals.

---

the controlling parties. These include: "(1) the right to remove the trustees, (2) the right to terminate the trust, (3) the right to modify the terms of the trust, (4) the right to elect trustees, and (5) the right to direct management decisions of the trustees." 45 U. Chi. L. Rev., at 416. The first four are present in this case; in addition, Fidelity's shareholders have the power to condition major dispositions of the trust assets on their affirmative approval.