**NEW YORK STATE TEACHERS RETIREMENT SYSTEM,**
Appellee,

v.

**Peter KALKUS, Lamar Properties, Inc., Arlington Alliance, Ltd., Polk & Taylor Associates, Lamar Financial, Inc., and Lamar Financial Partnership, Appellants.**

No. 84–2082.

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1985.

Decided June 20, 1985.

Grayson P. Hanes, Fairfax, Va. (Mark W. Wasserman, Hazel, Beckhorn & Hanes, Fairfax, Va., on brief), for appellants.

Rodney F. Page, Washington, D.C. (David T. Dekker, James J. Armbruster, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., on brief), for appellee.

Before HALL and CHAPMAN, Circuit Judges, and KNAPP, Senior United States District Judge, Southern District of West Virginia, sitting by designation.

K.K. HALL, Circuit Judge:

Peter Kalkus, Lamar Financial, Inc., Lamar Properties, Inc., Arlington Alliance, Ltd., Lamar Financial Partnership, and Polk & Taylor Associates Limited Partnership ("PTA") seek to appeal the district court's order, declaring that New York State Teachers Retirement System ("Teachers") is entitled to additional interest under certain mortgage agreements. Because we conclude that the district court did not have diversity jurisdiction, we vacate the judgment below and remand this case to the district court with directions to dismiss for lack of subject-matter jurisdiction.

## I.

On January 25, 1984, Teachers instituted this action in district court and sought a declaratory judgment interpreting particular terms in two agreements which modified deeds of trust on real estate located in Arlington County, Virginia. Jurisdiction was allegedly based on diversity of citizenship.

Teachers is a public retirement system created and existing by virtue of Article 11 of the Education Law of the State of New York and having the powers and privileges of a corporation pursuant to Section 502 of that statute. Teachers' principal place of business is in Albany, New York. It administers a system of retirement and pension benefits for retired public school employees in New York.

Except for PTA, all of defendants/appellants are citizens of states other than New York. PTA is a limited partnership established under the laws of Virginia. Its sole general partner is Kalkus, a resident and citizen of the State of New Jersey. Several dozen limited partners are residents of numerous states, including New York.

On March 7, 1984, defendants/appellants moved to dismiss the complaint, alleging, *inter alia,* that diversity jurisdiction had not been established on the ground that approximately twenty limited partners of PTA were non-diverse from Teachers. That motion was denied.

The case was tried to the district court, and on October 2, 1984, the court issued its final order and declaratory judgment, holding for Teachers on the merits, 595 F.Supp. 693. The district court concluded that it had jurisdiction over the action pursuant to 28 U.S.C. § 1332(a). It ruled that the citizenship of a limited partnership is determined by the citizenship of all of its general partners, without regard to the citizenship of any limited partners, and that,

therefore, all of the defendants, for jurisdictional purposes, were citizens of states other than New York.

Defendants appeal.

## II.

On appeal, the primary contention made by defendants/appellants is that the district court lacked subject-matter jurisdiction over this action. They maintain that all of the partners of PTA, both general and limited, must be considered in determining whether complete diversity exists. We agree and, consequently, do not reach the other contentions raised by appellants.

Neither the Supreme Court nor this Court has squarely addressed the question posed here, that is, whether the citizenship of a limited partner should be "counted" when a limited partnership sues or is sued in a diversity action.* However, the Supreme Court has consistently held that in diversity actions involving unincorporated associations, federal courts must look to the citizenship of each member of the association to determine whether diversity exists.

The rule that an unincorporated association was a citizen of the state of each of its constituent members was announced nearly a century ago in *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889). There, the Supreme Court held that a New York stock company, which it characterized as a "mere partnership," was not a citizen of New York because it was not a corporation. As a result, it could not invoke the diversity jurisdiction of a federal court because all of its members had not been shown to be diverse from the opposing party. Significantly, the joint stock company in *Chapman* had two classes of members: one class consisting of the president, who had capacity to sue, and the other consisting of the remaining members. Despite this distinction, the Supreme Court determined that the citizenship of all asso-

ciation members had to be considered to determine whether complete diversity existed. The Court did not seek to determine which of the members' classes were real parties in interest. *Carlsberg Resources Corp. v. Cambria Savings & Loan Ass'n*, 554 F.2d 1254, 1258–59 (3d Cir.1977).

Eleven years later, in *Great Southern Fireproof Hotel Co. v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900), the Court reaffirmed the *Chapman* rule and held that diversity jurisdiction had not been established with respect to a defendant Pennsylvania limited partnership association because all of the members of the defendant association were not shown to be diverse from the plaintiff. *Id.* at 456, 20 S.Ct. at 693. In *Great Southern*, unlike the case at bar, all of the partners were of a "limited" status. *Carlsberg Resources*, 554 F.2d at 1258.

More recently, in *United Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), the Supreme Court held that for diversity purposes a labor union's citizenship was that of each of its constituent members. Further, the Court, expressly reaffirming the *Chapman-Great Southern* rule even though it acknowledged that courts and commentators had expressed dissatisfaction with that rule, stated that: "[P]leas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to Congress and not to the courts." *Id.* at 150–51, 86 S.Ct. at 275. Although all members of the union did not have managerial authority, the Court did not undertake to ascertain who among the members of the union might be the real parties in interest.

Notwithstanding this line of Supreme Court precedent, the Second Circuit, in *Colonial Realty Corporation v. Bache & Company*, 358 F.2d 178 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), held that the citizenship of limit-

---

* The issue of whether a limited partner's citizenship is relevant when the general partner is diverse, was raised, but not decided, in *Jaffe-Spindler Co. v. Genesco, Inc.*, 747 F.2d 253, 255

n. 1 (4th Cir.1984), because it was determined at oral argument that all of the limited partners were diverse.

ed partners was immaterial on the question of whether complete diversity existed. That decision contains little analysis, cites no supporting authority, fails to mention *Chapman* and *Great Southern*, and rests on New York law that a limited partner has no capacity to sue or be sued on behalf of the partnership.

The Third Circuit, in *Carlsberg Resources Corp. v. Cambria Savings & Loan Ass'n*, 554 F.2d 1254 (3d Cir.1977), rejected the notion that only the citizenship of the real parties in interest was to be considered in determining whether complete diversity existed and held that a non-diverse limited partner destroyed diversity jurisdiction. The Third Circuit reasoned that implicit in *Chapman* was a refusal by the Supreme Court to differentiate between classes of association or partnership members regarding questions of diversity. The court in *Carlsberg Resources* further acknowledged that in *Bouligny* the Supreme Court had continued to adhere to the rule that unincorporated associations were, for jurisdictional purposes, deemed to be citizens of each of their members states and concluded that in so doing, the Supreme Court had "[taken] a rather hard line, demanding that existing principles respecting diversity jurisdiction be strictly followed." *Id.* at 1259. Moreover, the Third Circuit disagreed with the Second Circuit's approach in *Colonial Realty*, reasoning that reliance on state law capacity to sue rules was improper because this empowered state legislatures and state courts to determine the perimeters of federal jurisdiction. Furthermore, the court in *Carlsberg Resources* concluded that such an interpretation of the diversity rules would violate Fed.R.Civ.P. 82, which prohibits using the Federal Rules of Civil Procedure, including the rules governing capacity to sue, to extend federal jurisdiction. *Id.* at 1260–61. The Third Circuit also observed that it could not agree with the Second Circuit's departure from the *Chapman-Great Southern* rule because the Supreme Court's decisions had not authorized such a departure. *Id.* at 1261–62. Finally, the Third Circuit could discern no policy

rationales for adopting the teachings of *Colonial Realty*. *Id.* at 1262.

Thereafter, the Supreme Court held in *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), that only the citizenship of the trustee of a Massachusetts business trust had to be taken into account for purposes of diversity jurisdiction. Although the Court recognized the *Chapman-Great Southern* rule for unincorporated associations, it explained that the express trust was "neither an association nor a corporation for purposes of the diversity analysis." *Id.* at 462, 100 S.Ct. at 1782. The Court further explained that its holding was based on prior precedent beginning as early as 1808 that trustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship. The Court also stated in a footnote that: "The Court has never analogized express trusts to business associations for purposes of diversity jurisdiction." *Id.* at 463, n. 10, 100 S.Ct. at 1783 n. 10. Thus, the Court limited its decision to trusts. Clearly, *Navarro* does not authorize the extension of the use of the "real party-in-interest" test in cases of trusts to business associations, such as limited partnerships. *Trent Realty Associates v. First Federal Savings & Loan Ass'n*, 657 F.2d 29, 32 (3d Cir.1981).

Following *Navarro*, the Seventh Circuit held in *Elston Investment, Ltd. v. David Altman Leasing Corp.*, 731 F.2d 436 (7th Cir.1984), that the citizenship of limited partners had to be considered in determining whether diversity jurisdiction existed. The Seventh Circuit relied on *Navarro* in rejecting the defendant limited partner's contentions that limited partnerships were analogous to express business trusts and that, therefore, they were entitled to the diversity treatment the Supreme Court had given such trusts in *Navarro*. *Id.* at 438. In addition, the Seventh Circuit rejected the argument that limited partners are not "real parties" to controversies involving the partnership on the ground that they have no capacity to sue on behalf of the partnership. In so ruling, the Seventh Cir-

cuit noted the Supreme Court's holding in *Chapman* that the citizenship of every member of a joint stock company was relevant to a determination of diversity even though suit could only be brought in the name of the company's president. *Id.* at 438–39. Finally, the Seventh Circuit found no merit in the limited partner's assertion that the citizenship of limited partners is irrelevant because they neither manage partnership assets nor control partnership litigation. In support of this conclusion, the Seventh Circuit pointed to the Supreme Court's decision in *Bouligny* where each member's citizenship was held to be relevant to a determination of diversity even if all of the union members did not have managerial responsibility. In short, the Seventh Circuit found "no basis in precedent" for refusing to consider the citizenship of limited partners and, even assuming that it might have been so persuaded, observed that the Supreme Court had directed in *Bouligny* that any change in the rules for determining diversity of citizenship must come from Congress. *Id.* at 439.

We find the view of the Third and Seventh Circuits to be more consonant with Supreme Court precedent than the Second Circuit's and, therefore, hold that for purposes of diversity the citizenship of a limited partnership is determined by considering the citizenship of all of its partners, both general and limited. Accordingly, the judgment below is vacated, and this case is remanded to the district court with directions to dismiss for lack of jurisdiction.

VACATED AND REMANDED WITH DIRECTIONS.