SHULTZ CORPORATION, an Oklahoma corporation; Shultz Cattle Breeding, Inc., a Texas corporation; Shultz Cattle Company, Inc., an Oklahoma corporation; Pitchfork Cattle Breeding Herd Limited Partnership, a Texas limited partnership; and Crosbell Cattle Breeding Herd Limited Partnership, a Texas limited partnership, Plaintiffs,

v.

INDUSTRIAL INDEMNITY CO., a California corporation; CCG Financial Corp., an Oregon corporation; and CCG Consulting, Inc., dba Coast Consulting Group, an Oregon corporation, Defendants.

Civ. No. 89–621–JU.

United States District Court, D. Oregon.

Dec. 13, 1989.

Gerald V. Weigle, Jr. and John D. Luken, Dinsmore & Shohl, Cincinnati, Ohio, and Kim Buckley, Esler, Stephens & Buckley, Portland, Or., for plaintiffs.

David J. Brown and Barbara S. Gaal, Brobeck, Phleger & Harrison, San Francisco, Cal., and R. Erick Johnson and Robert B. Lowry, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant Industrial Indem. Co.

Peter H. Glade, Markowitz, Herbold, Stafford & Glade, Portland, Or., for defendants CCG Financial Corp. and CCG Consulting, Inc., dba Coast Consulting Group.

## OPINION

FRYE, District Judge:

The matters before the court are:

1) the objections of plaintiffs, Shultz Corporation, Shultz Cattle Breeding, Inc., Shultz Cattle Company, Inc. Pitchfork Cattle Breeding Herd Limited Partnership, and Crosbell Cattle Breeding Herd Limited Partnership (the Shultz parties) to the Findings and Recommendation of the Honorable George E. Juba, United States Magistrate, dated September 26, 1989; and

2) the appeal of defendant Industrial Indemnity Co. (Industrial) from the order of Judge Juba dated September 18, 1989.

## BACKGROUND

This is an action for rescission and damages brought by a group of related corporations and limited partnerships against Industrial, CCG Financial Corp. (CCG Financial) and CCG Consulting, Inc. (CCG Consulting). The alleged basis for jurisdiction is diversity of citizenship.

Shultz Corporation (Shultz) is an Oklahoma corporation with its principal place of business in the State of Texas. Shultz Cattle Breeding, Inc. (SCBI) is a Texas corporation with its principal place of business in the State of Texas. Shultz Cattle Company, Inc. (SCCI) is an Oklahoma corporation with its principal place of business in the State of Texas. Pitchfork Cattle Breeding Herd Limited Partnership (Pitchfork) is a Texas limited partnership. SCBI is the general partner of Pitchfork. Crosbell Cattle Breeding Herd Limited Partnership (Crosbell) is a Texas limited partnership. SCBI is the general partner of Crosbell. Some of the limited partners in Pitchfork and in Crosbell are citizens of the State of California.

Industrial is a California corporation with its principal place of business in San Francisco, California. CCG Financial is an Oregon corporation with its principal place of business in Portland, Oregon. CCG Consulting is an Oregon corporation with its principal place of business in Portland, Oregon.

The limited partnerships, Pitchfork and Crosbell, were formed in 1983. Each of the limited partners made an investment sufficient to purchase one hundred or more cows. The intent of the limited partnerships was to breed herds of cattle resulting in calf crops that would generate tax benefits and, ultimately, a profitable return on the limited partners' investments.

At the outset, the limited partners each made a cash down payment and borrowed funds for the remainder of their investments. However, as time went on, Pitchfork and Crosbell made financing available to the investors through notes which were secured by financial guarantee bonds. The Shultz parties used CCG Consulting to locate and arrange guarantee bond financing through Industrial. As a condition of the bonds being issued in 1984 and 1985, Industrial required that a trust be created, that CCG Financial be appointed as the trustee, and that certain funds be placed in reserve.

Disputes developed between the Shultz parties, the CCG parties, and Industrial. The breeding operations were not successful, and the Shultz parties experienced difficulties with their investors. The Shultz parties allege that the CCG parties and Industrial committed fraud, misrepresentation, breach of fiduciary duty, breach of contract, and breach of the duty of good faith and fair dealing. The Shultz parties also allege that Industrial committed intentional interference with contractual relations and prospective business advantage.

Two other actions have been filed which concern some of the same parties and circumstances. In *Brant v. CCG Financial Corp.*, Civil No. 87–655–FR (D.Or.), an individual investor who is not a limited partner in Pitchfork or Crosbell sued Industrial and various CCG and Shultz parties.[1] In May, 1989, many of the limited partners of Pitchfork and Crosbell sued Industrial, the CCG parties, and the Shultz parties in courts in the State of Florida. *Bowyer v. Shultz Corp.*, No. CI–89–3583 (9th Jud.Cir. Florida).

This action was filed in June, 1989. Industrial moved to dismiss the action contending that the court lacks subject matter jurisdiction because some of the limited partners of Pitchfork and Crosbell are citizens of the State of California as is Industrial.[2] In the alternative, Industrial asked this court to abstain from exercising jurisdiction over the claims in this action in favor of the related action pending in the State of Florida.

In his Findings and Recommendation dated September 26, 1989, Judge Juba recommended that Industrial's motion to dismiss be granted because some of the limited partners of Pitchfork and Crosbell are citizens of the same state as Industrial. Judge Juba did not reach the abstention issue. The Shultz parties object to the

Findings and Recommendation, arguing that the court should not consider the citizenship of limited partners in determining whether diversity jurisdiction exists. The Shultz parties also argue that they should be allowed to preserve diversity by voluntarily dismissing Pitchfork and Crosbell from the action.

Industrial also appeals from an order entered by Judge Juba on September 18, 1989. On September 7, 1989, Industrial filed a motion objecting to statements concerning the settlement agreement in the *Brant* action which were made by the Shultz parties in their opposition to Industrial's motion to dismiss. Industrial contended that the Shultz parties violated a confidentiality order which was entered by the Honorable Otto R. Skopil, Jr., United States Circuit Judge, in the *Brant* action and requested 1) an evidentiary hearing; 2) that proceedings be closed to the public; and 3) that court records be sealed. Judge Juba held a telephone hearing on September 13, 1989. On September 18, 1989, Judge Juba denied Industrial's motion by minute order.

## APPLICABLE LAW

■ When either party objects to any portion of a magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

■ On an appeal from a non-dispositive order entered by a magistrate, the district court must determine whether the order is clearly erroneous or contrary to law. 28

---

**1.** Two other related cases were also filed in the District of Oregon: *Industrial Indemnity Co. v. CCG Financial Corp.*, Civil No. 87–479–FR; and *CCG Financial Corp. v. Industrial Indemnity Co.*, Civil No. 87–481–FR. These cases have been settled, as well as the cross-claims among Industrial, the CCG parties, and the Shultz parties in the *Brant* action. However, Brant's claims

against the CCG parties are still pending in the *Brant* action, Civil No. 87–655–FR.

**2.** Industrial also contended that Shultz, SCBI and SCCI lacked legal capacity because their corporate status was suspended. The Shultz parties have since renewed their corporate status, and Industrial concedes that they now have capacity to sue in federal court.

U.S.C. § 636(b)(1)(A); *McDonnell Douglas, supra,* 656 F.2d at 1313.

## ANALYSIS AND RULING

1. *Objections to Findings and Recommendation*

The Shultz parties object to Judge Juba's recommendation that this case be dismissed for lack of subject matter jurisdiction. Judge Juba found that diversity of citizenship does not exist between all plaintiffs and all defendants in this case because some of the limited partners are citizens of the State of California, as is Industrial. The Shultz parties contend that only the citizenship of the general partners of a limited partnership should be considered in determining whether there is diversity of citizenship.

There is a split of authority among the circuits on this issue.[3] The Second Circuit and the Fifth Circuit have ruled that where an unincorporated association is a party to an action, only the citizenship of the real parties in interest should be considered. Therefore, the Second and Fifth Circuits do not consider the citizenship of limited partners in determining the citizenship of a limited partnership. *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 240 (5th Cir.1986); *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

The majority of circuits which have considered the issue have ruled that the citizenship of each member of an unincorporated association, including limited partners, must be considered in determining whether diversity of citizenship exists. *See, e.g., Stouffer Corp. v. Breckenridge,* 859 F.2d 75, 76–77 (8th Cir.1988); *New York State Teachers Retirement System v. Kalkus,* 764 F.2d 1015, 1017–19 (4th Cir. 1985); *Elston Investment, Ltd. v. David Altman Leasing Corp.,* 731 F.2d 436 (7th Cir.1984); *Carlsberg Resources Corp. v. Cambria Savings and Loan Ass'n,* 554 F.2d 1254 (3d Cir.1977).

■ The Ninth Circuit has not ruled on this issue in the context of a limited partnership. However, the decisions in the Ninth Circuit regarding other forms of unincorporated association suggest that the Ninth Circuit would follow the majority rule. In *Fifty Assocs. v. Prudential Ins. Co. of America,* 446 F.2d 1187 (9th Cir. 1970), the Ninth Circuit stated that "[t]he citizenship of each member of an unincorporated association must be alleged, even though the entity might be recognized at state law as having the ability to sue and the liability to be sued." 446 F.2d at 1190.

Two district courts in this circuit have held that the court must consider the citizenship of each member of an unincorporated association for purposes of determining diversity jurisdiction. *Sage Investors v. Group W Cable, Inc.,* 666 F.Supp. 186 (D.Ariz.1986); *Windward City Center of Haw. v. Transamerica Occidental Life Ins. Co.,* 613 F.Supp. 1216 (D.Haw.1985).

While the Supreme Court has not yet enunciated a rule regarding the citizenship of limited partnerships, traditionally the Supreme Court has held that for diversity purposes, an unincorporated association's citizenship is that of each of its members. *See United Steelworkers of America v. R.H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Chapman v. Barney,* 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889).

In *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), the Court held that the trustees of a business trust may invoke diversity jurisdiction on the basis of their own citizenship, regardless of the beneficiaries' citizenship. The proponents of the minority rule argue that *Navarro* signaled a new approach by the Supreme Court, in which the nature of the association and the real parties in interest are considered in determining whether there is diversity of citizenship. These courts reason that a limited partnership is more like a business trust or a corporation

---

**3.** This issue is now pending before the Supreme Court in the case of *Carden v. Arkoma Assocs.,* Civil No. 88–1476, on appeal from the Fifth Circuit. Oral argument was heard on November 7, 1989. The Supreme Court has not yet issued an opinion.

than a typical unincorporated association, as the limited partners have only limited liability and limited responsibility. *Mesa Operating, supra*, 797 F.2d at 240.

Proponents of the majority rule argue that *Navarro* did not change the traditional rule as to limited partnerships, pointing to the Court's statements that "unincorporated associations remain mere collections of individuals," and that the persons composing such associations "are the parties whose citizenship determines the diversity jurisdiction of a federal court." 446 U.S. at 461, 100 S.Ct. at 1782. The Court also stated in *Navarro:* "[t]his case involves neither an association nor a corporation. Fidelity is an express trust." *Id.* at 462, 100 S.Ct. at 1782.

The court concludes that *Navarro* did not change the traditional rule as to limited partnerships, and that the Ninth Circuit would adhere to the traditional rule. Therefore, the court adopts Judge Juba's Findings and Recommendation that the action should be dismissed for lack of diversity.

However, the inquiry does not end here. The Shultz parties seek an opportunity to amend the complaint to dismiss the non-diverse parties, Pitchfork and Crosbell. The Shultz parties contend that Pitchfork and Crosbell are not necessary or indispensible parties to this action. This issue was not raised before Judge Juba, and it is not possible to determine on the present record whether Pitchfork and Crosbell are necessary or indispensible to this action.

█ Therefore, the court will dismiss the action with leave to amend. In the *Fifty Assocs.* decision, the Ninth Circuit noted that leave to amend may be granted even where the dismissal is for lack of subject matter jurisdiction. 446 F.2d at 1193. If the Shultz parties choose to file an amended complaint, the defendants may raise the issue of necessary or indispensible parties at that point.[4]

---

**4.** If appropriate, Industrial may also renew its motion seeking abstention in favor of the Flor-

### 2. *Appeal From Magistrate's Order*

Industrial appeals from Judge Juba's order of September 18, 1989. Industrial contends that the Shultz parties violated the confidentiality order entered by Judge Skopil in the *Brant* action. That order, entered February 21, 1989, requires that all matters disclosed in preparation for and during the course of settlement proceedings in the *Brant* action be held in strict confidence. Industrial objects to statements made by the Shultz parties in their opposition to Industrial's motion to dismiss or abstain from this action.

In its motion, Industrial requested 1) an evidentiary hearing at which Judge Skopil could testify regarding the scope of the confidentiality order; 2) that proceedings be closed to the public; and 3) that court records be sealed. Judge Juba held a telephone hearing regarding the motion on September 13, 1989. On September 18, 1989, Judge Juba denied Industrial's motion by minute order.

In its appeal, Industrial contends that this motion should not be deemed moot even if the action is dismissed for lack of subject matter jurisdiction. Industrial argues that the parties need guidance as to the scope of the confidentiality order because two actions remain pending which concern many of the same parties and issues. This argument is without merit. If the scope of the confidentiality order is relevant in other actions, the scope of that confidentiality order may be determined in those actions. Indeed, two motions on this issue are now pending in the *Brant* action.

However, the court finds that the motion is not moot because this action may proceed upon an amended complaint. Therefore, the court will consider the merits of the motion.

Judge Skopil's order states, in full:

The following order is binding on the court and all participants in the settlement negotiations commencing on February 21, 1989.

ida state action.

All matters disclosed, either orally or in writing, in preparation for and during the course of settlement proceedings, will be held in strict confidence. Dissemination of information regarding settlement terms proposed or discussed is absolutely forbidden. Any information obtained by either plaintiff or defendants as a result of the settlement proceedings may not be used in any trial on the merits unless obtained independently in the regular course of discovery. This order is not intended to restrict the normal use of discovery by any party.

(Exhibit E to Industrial's Notice of Appeal and Statement).

 Industrial objects to statements made in the Shultz parties' memorandum in opposition to Industrial's motion to dismiss or abstain and to statements made in an affidavit of Kim T. Buckley. The memorandum and Buckley's affidavit state that the parties to the *Brant* action participated in a settlement conference before Judge Skopil; that a settlement was reached on March 2, 1989; that Industrial later repudiated the settlement agreement; that Judge Skopil held a show cause hearing on June 12, 1989, at which he chastised Industrial for its attempt to repudiate the settlement agreement; and that thereafter Industrial resumed discussions which led to the memorialization of the settlement agreement in written form.

Aside from a brief discussion regarding sales of cattle, the statements in the memorandum and affidavit do not disclose information regarding the settlement negotiations or the terms of the settlement. Judge Skopil's order is strict in its terms, but it does not prevent the parties from disclosing the fact that there were settlement negotiations; that a settlement was reached; that Industrial attempted to repudiate the agreement; and that Judge Skopil ruled that an agreement was in effect. These are matters of public record which do not injure the confidentiality of the settlement negotiations or the terms of the settlement.

As to Buckley's statements regarding the sale of cattle, Industrial made a more detailed disclosure of these facts in a letter dated May 11, 1989, which was sent to the court and all counsel. In addition, Industrial attached copies of the memorandum and affidavit which it finds objectionable as exhibits to a motion filed in the *Brant* case, and did not attempt to place these documents under seal.

The court finds that Judge Juba's order was not clearly erroneous or contrary to law in finding that the Shultz parties did not violate Judge Skopil's order and that none of the relief requested by Industrial should be granted. Judge Juba's order is affirmed.

## CONCLUSION

The court adopts Judge Juba's Findings and Recommendation of September 26, 1989. Industrial's motion to dismiss (# 16) is granted. The Shultz parties are granted leave to file an amended complaint.

Judge Juba's order of September 18, 1989 is affirmed.