**Frederick BEARSE, Plaintiff,**

v.

**MAIN STREET INVESTMENTS and John Norman, Defendants.**

No. 6:01–CV–1326–ORL–22J.

United States District Court,
M.D. Florida,
Orlando Division.

July 3, 2002.

---

Margaret Eleanor Kozan, Holland & Knight, LLP, Orlando, FL, William Shields, Jonathan I. Handler, Day, Berry & Howard, Boston, MA, Stephen C. Sadin, Chicago, IL, for plaintiff.

John Norman, Lilburn, GA, pro se.

## ORDER

CONWAY, District Judge.

This cause is before the Court on Defendant Main Street Investments' Motion to Dismiss (Doc. No. 49) filed December 10, 2001, and on Defendant John Norman's Motion to Dismiss (Doc. No. 52) filed December 31, 2001.

The United States Magistrate Judge has submitted a report recommending that the Motions be denied.

After an independent *de novo* review of the record in this matter, and noting that no objections were filed by Defendant Norman, and that the objections of Defendant Main Street Investments were withdrawn (Doc. No. 84), the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendations. Further, this Court notes that the Mediator has filed a Report indicating that the case has been completely settled as to Defendant Main Street Investments (Doc. No. 83).

Therefore, it is **ORDERED** as follows:

1. The Report and Recommendation filed May 24, 2002 (Doc. No. 79) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. Defendant Main Street Investments' Motion to Dismiss (Doc. No. 49) is DENIED as moot. Pursuant to Local Rule 3.08(b) of the Middle District of Florida this cause is hereby **DISMISSED** without prejudice as to Defendant Main Street Investments, subject to the right of any party to re-open the action within sixty (60) days, upon good cause shown, or to submit a stipulated form of final order or judgment.

3. Defendant John Norman's Motion to Dismiss (Doc. No. 52) is DENIED. Defendant Norman shall file his answer to the Complaint no later than August 2, 2002. Failure to file a response may result in a default being entered against Defendant Norman.

4. Plaintiff Frederick Bearse shall file and serve a written response to the Court's inquiries contained on pages 10 and 11 of the Report and Recommendation regarding the Trust no later than July 24, 2002.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration at a hearing on March 12, 2002 on the following motions:

> MOTION: DEFENDANT MAIN STREET INVESTMENTS' MOTION TO DISMISS (Doc. No. 49)

**FILED: December 10, 2001**

**THEREON** it is **RECOMMENDED** that the motion be **DENIED.**

**MOTION: DEFENDANT JOHN NORMAN'S MOTION TO DISMISS (Doc. No. 52)**

**FILED: December 31, 2001**

**THEREON** it is **RECOMMENDED** that the motion be **DENIED.**

Plaintiff Frederick H. Bearse ("Bearse") brought this diversity action against defendants Main Street Investments f/k/a Regal Investments ("Main Street") and John Norman ("Norman") alleging fraud in conjunction with a 1994 offering of mortgaged backed bonds by a Florida church. Main Street and Norman move to dismiss Bearse's complaint as barred by the statute of limitations for fraud; for failure to plead fraud with the particularity required by Fed.R.Civ.P. 9(b); and for failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the reasons that follow, it is **RECOMMENDED** that defendants' motions to dismiss [Docket Nos. 49 and 52] be **DENIED.**

## I. BACKGROUND

### A. Procedural Background

On August 25, 2000, Bearse filed this complaint in the United States District Court for the District of Massachusetts. Docket No. 1. On November 15, 2000, Main Street filed, in the District Court of Massachusetts, a motion to dismiss the complaint or, alternatively, a motion to transfer venue. In its motion, Main Street asserted that the case should be dismissed because: 1.) Bearse's claim is barred by the statute of limitations for fraud; 2.) Bearse's claim failed to satisfy the strict pleading requirements of Fed.R.Civ.P. 9(b); 3.) the complaint failed to allege an actionable fraud; and, 4.) the Massachusetts Court did not have personal jurisdiction over Main Street and venue was improper.

On October 25, 2001, the Massachusetts Court found that it lacked *in personam* jurisdiction over Main Street and Norman under the Massachusetts Long Arm Statute,[1] Mass. Gen. Laws ch. 223 A, § 3. Docket No. 53, Ex. A. The court also found that venue was improper. *Id.* The Massachusetts court then addressed the issue of whether to dismiss the case for lack of *in personam* jurisdiction or whether to transfer the case to the Middle District of Florida—the place where the alleged fraud and sales took place. *Id.* at 18—23. The court determined that pursuant to 28 U.S.C. § 1406, it had the power to transfer the case to the Middle District of Florida. *Id.* at 23. Without ruling on the remaining arguments, the Court ordered that the case be transferred to the Middle District of Florida.[2] *Id.*

On December 10, 2001, Main Street filed its motion to dismiss [Docket No. 49]. On

---

**1.** The *transferred* record does not indicate whether the defendants were properly served. However, no party challenges service of process, and no party contests *in personam* jurisdiction in the Middle District of Florida.

**2.** Because the Massachusetts court did not have *in personam* jurisdiction over the defendants, and because venue was inappropriate in Massachusetts, the Massachusetts court did not adjudicate the case on the merits. Contrary to Bearse's arguments, this Court is not now precluded from considering Main Street's motion to dismiss on the merits. *See Luckey v. Miller,* 929 F.2d 618 (11th Cir.1991) (authorizing a second motion to dismiss based on grounds not considered by the original trial court); *see also Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (the doctrine of law of the case comes into play only with respect to issues previously determined).

December 31, 2001, Norman filed his motion to dismiss relying on Main Street's arguments. Docket No. 52. On January 3, 2002, Bearse filed his memorandum in opposition to the motions to dismiss. Docket No. 53. A hearing was scheduled on the motions to dismiss for February 6, 2002. Docket No. 57. On January 31, 2002, the parties jointly moved for a continuance of the February 6, 2002 hearing. Docket No. 59. The Court granted the parties' motion for continuance [Docket No. 60], and a hearing on the defendants motions to dismiss, together with a Preliminary Pretrial Conference, was held on March 12, 2002 [Docket No. 69]. On March 25, 2002, Bearse filed a proposed report and recommendation.[3] Docket No. 70.

### B. Factual Background

According to the complaint, Bearse is a citizen of the State of Massachusetts. Complaint, ¶ 1. Defendant Main Street, a registered broker/dealer, is an Ohio corporation with its principal place of business in Marietta, Cobb County, Georgia. Complaint, ¶ 2. Defendant John Norman, a representative of Main Street, is a citizen of the State of Georgia. Crossings Community Church ("CCC"), a non-party, is a Florida corporation with its principal place of business in Lake Mary, Florida. Complaint, ¶ 1. Federal subject matter jurisdiction is based on diversity of citizenship.

In late 1993, CCC contacted Main Street to assist with an issuance of bonds (the "Bonds"). Docket No. 50 at 3. Main Street provided professional and technical services in preparing the Bond issue. *Id.* Main Street offered the Bonds to members of CCC and to the general public. *Id.* Main Street classified the Bonds as First Mortgage Serial Sinking Fund Bonds, Series A, with an issue date of March 1, 1994. Complaint, ¶ 18. The Bonds were secured in part by real estate located in Florida. As security for the Bonds, CCC executed a Trust Indenture and Mortgage/Deed of Trust and Security Agreement ("Trust Indenture"), which was filed and recorded in Seminole County, Florida.

Main Street offered the Bonds pursuant to a prospectus dated March 1, 1994 (the "Prospectus"). Complaint, ¶ 18 and Prospectus, Ex. A. The Prospectus, which Bearse received in connection with the purchase of the Bonds, stated that the aggregate amount of the Bonds would be $1,700,000. Complaint, ¶ 18.

In February 1994, Bearse met with James Cox ("Cox"), the pastor of CCC, in Lake Mary, Florida. Docket No. 53 at 2. According to Bearse, Cox told Bearse about the plans to construct a building to house CCC. Cox suggested that Bearse invest in the Bonds. *Id.* at 2.

In February or March 1994, Main Street's representative, Norman, and Scott Hatfield, the bond trustee for CCC, attended an investors meeting in Lake Mary, Florida. Complaint, ¶ 22, Docket No. 53 at 2. Bearse also attended this meeting. *Id.* Bearse alleges that at this meeting Norman told him that the CCC bonds were "a good investment in that they had a high interest rate, James Cox was a good young pastor who planned to get his Ph.D., and the Bonds were secure because of the value of the Property."

---

**3.** Bearse's proposed Report and Recommendation falls far below the minimum standard expected by this Court. Rather than provide a proposed Report and Recommendation that tracks this Court's detailed ruling on March 12, 2002, Bearse essentially refiled his prior memorandum in opposition to the motion to dismiss, and labeled it as the proposed Report and Recommendation. *See* Docket No. 53.

Complaint, ¶ 22. According to Bearse, Norman also told him that if he invested $300,000 in the Bonds, "he would be repaid within six months because [Main Street] could easily sell additional bonds to retire Bearse's Bonds." Complaint, ¶ 23.

On March 2, 1994, Bearse received the Prospectus and entered into two Subscription Agreements in Lake Mary, Florida.[4] Docket No. 51, Declaration of James C. Burchett [hereinafter "Burchett Decl."], ¶ 13. According to Bearse, he did not enter into the agreements in his own name. Rather, he caused "The Fred Bearse Real Estate Trust, Frederick H. Bearse as Trustee" to enter into the two Subscription Agreements for the exchange and/or purchase of Bonds in the amounts of $145,000 and $4,000 respectively. Burchett Decl., ¶ 13, Exs. C and D.

Subsequent to this purchase, Bearse alleges that he was not repaid in six months, or by September 1994, as promised. Complaint, ¶ 24. Bearse, however, did receive interest payments. Docket No. 53 at 5. By letter dated August 29, 1996, Cox told Bearse that CCC could not meet its obligations under the Bonds. Complaint, ¶ 27. Almost four years to the day after receiving the letter, Bearse filed this suit on August 15, 2000 alleging that Main Street and Norman committed fraud in the sale of the Bonds. *See* Docket No 1.

## II. *APPLICABLE LAW*

### A. Diversity Jurisdiction under 28 U.S.C. § 1332

Section 1332 of Title 28 of the United States Code provides that:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

The Supreme Court long ago recognized that the trustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship. *Navarro Savings Association v. Lee*, 446 U.S. 458, 462, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). A trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others. *Navarro*, 446 U.S. at 464, 100 S.Ct. 1779. By contrast, unincorporated associations remain mere collections of individuals, each of whose citizenship determines (and potentially defeats) the diversity jurisdiction of a federal court. *See Navarro*, 446 U.S. at 461, 100 S.Ct. 1779; *United Steelworkers of America, AFL–CIO v. R.H. Bouligny*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). The

---

4. The two Subscription Agreements and the Trust Indenture are submitted as exhibits to the Burchett Declaration. These documents are incorporated by reference into Bearse's complaint and into the Prospectus, which is attached to and considered part of the Bearse's complaint. According to the briefs, the Trust Indenture referred to in the complaint is a public record on file in Seminole County, Florida. The Court may consider these documents on a motion to dismiss without converting the motion to one for summary judgment. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir.1999); *Shibata v. Lim*, 133 F.Supp.2d 1311, 1313 (M.D.Fla. 2000).

mere designation of an entity as a trust rather than an unincorporated association is not controlling for purposes of determining diversity of citizenship. *See Xaros v. U.S. Fidelity and Guaranty Company,* 820 F.2d 1176, 1181 (11th Cir.1987) (entities describing themselves as trust funds and seeking to predicate diversity jurisdiction on the citizenship of the putative trustee failed to allege facts negating their existence as voluntary unincorporated associations).

Similarly, Federal Rule of Civil Procedure 17(a) (emphasis added) also requires that

> *Every action shall be prosecuted in the name of the real party in interest.* An executor, administrator, guardian, bailee, *trustee of an express trust,* a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute *may sue in that person's own name without joining the party for whose benefit the action is brought;* and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

▮ Rule 17(a) is consistent to the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy. *Navarro,* 446 U.S. at 462 n. 9, 100 S.Ct. 1779. When determining wheth-

er complete diversity exists, a federal court must disregard nominal parties and rest jurisdiction only upon the citizenship of real parties to the controversy. *Navarro,* 446 U.S. 458, 461, 100 S.Ct. 1779 (1980).

### B. Standard of Review for Motion to Dismiss

A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990); *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986); *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985) (threshold is "exceedingly low"). In determining whether to dismiss a case, the Court accepts the allegations in the complaint as true, and otherwise views the allegations in the light most favorable to the plaintiff. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir.1992) citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). The Court does not generally accept conclusory allegations as true. *See South Florida Water Management District v. Montalvo,* 84 F.3d 402, 408 n. 10 (11th Cir.1996); *accord, Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974).

### C. Statute of Limitations

▮ In Florida, the statute of limitations bars a fraud claim after four years from the accrual of the cause of action. Fla. Stat. 95.11(j). According to the Florida courts, Florida's statute of limitations

for fraud begins running either at the time the plaintiff learned of the fraud, or at the time when the plaintiff, exercising due diligence, reasonably should have learned about the facts giving rise to the fraud claim. *See Moneyhun v. Vital Indus., Inc.,* 611 So.2d 1316, 1322 (1st D.C.A.1993). The "due diligence" standard of the discovery rule is an objective standard. *See Azalea Meats v. Muscat,* 246 F.Supp. 780, 783 (S.D.Fla.1965).

Furthermore, the question of when fraud is discovered is a question for the jury. The question cannot be decided on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) unless the pleadings contain facts which demonstrate both a lack of diligence and a failure to file the complaint within four years from the aggrieved party's discovery of the fraud. *Knight v. E.F. Hutton and Co., Inc.,* 750 F.Supp. 1109 (M.D.Fla.1990); *accord, Nerbonne v. Lake Bryan International Properties,* 685 So.2d 1029 (5th D.C.A.1997).

### D. Rule 9(b) and Stating a Fraud Cause of Action

■ Fed.R.Civ.P. 9(b) requires that, in all averments of fraud, the circumstances constituting the fraud "shall be stated with particularity." According to the United States Court of Appeals for the Eleventh Circuit, Rule 9(b) may be satisfied if the complaint sets forth: 1.) precisely what statements were made, in what documents or oral representations, or what omissions were made, and 2.) the time and place of each such statement and the person responsible for making the same, and 3.) the content of such statements and the manner in which they misled the plaintiff, and 4.) what the defendants obtained as a consequence of the fraud. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d

1364, 1371 (11th Cir.1997). In other words, "[p]leading a predicate act with specificity requires a complaint to answer the familiar questions of who, where, when, how, and why". *Buck Chevrolet, Inc.,* 54 F.Supp.2d at 1136 (M.D.Fla.1999) (granting defendant's motion to dismiss).

■ To state a claim for fraud, a plaintiff must plead that he was the victim of intentional misrepresentations, that he relied on those misrepresentations, that he was damaged as a result of those misrepresentations, and that the misrepresentations caused the damage. *Powell v. United States,* 945 F.2d 374 (11th Cir.1991); *Floyd v. Eastern Airlines,* 872 F.2d 1462 (11th Cir.1989); *Ross v. Bank South, N.A.,* 837 F.2d at 980; *Mann v. Adams Realty Company, Inc.,* 556 F.2d 288 (5th Cir.1977) and *Dudley v. Southeastern Factor and Finance Corporation,* 446 F.2d 303 (5th Cir.1971).

## III. *APPLICATION*

Defendants do not claim lack of subject matter jurisdiction as a basis for dismissal. Nevertheless, jurisdiction is a threshold inquiry that this Court must undertake before considering the issues raised by the parties.

### A. Diversity of Jurisdiction

According to the complaint, the Fred Bearse Real Estate Trust (the "Bearse Trust" or the "Trust"), Frederick H. Bearse as Trustee, entered into the two Subscription Agreements for the exchange and/or purchase of Bonds in the amounts of $145,000 and $4,000 respectively. The complaint does not indicate whether Bearse brought this suit in his own individual capacity or as trustee of the Bearse Trust.

At the March 12, 2002 hearing, Bearse stated that he created the Bearse Trust pursuant to the recommendation of Bearse's estate planning attorney, but that the Trust no longer existed. The parties have not provided this Court with a copy of the Bearse Trust agreement or evidence of dissolution. Although Bearse's counsel believes that the Bearse Trust was created in Massachusetts, the parties could not describe how the Trust was created or dissolved. Nor could the parties state what law governed the creation of the Trust or the dissolution of the Trust. The parties also could not identify the settlors of the Trust, any other trustees, or the beneficiaries. Upon the Court's inquiry, the parties could not state whether the trustee or the beneficiary was the real party in interest, whether Bearse had any interest in the Subscription Agreements other than as a trustee, or whether the Trust should be named as a plaintiff. The parties could not say whether the very cause of action asserted in the complaint now under review was an asset of the Trust, or of Bearse personally. If the Trust has indeed been dissolved, the effect of dissolution on the beneficiaries is unclear.

In determining whether complete diversity exists, the Court must examine the citizenship of the *real parties* to the controversy. The parties have not told this Court, with any degree of certainty, the status of the Trust, in what capacity Bearse brings this suit, and whether Bearse is the sole, real party in interest for purposes of determining diversity jurisdiction. Accordingly, it is **RECOMMENDED** that the district court order Bearse to file and serve a written response answering the above questions. This will permit the district court to review subject matter jurisdiction at a later time.

The Court now proceeds to the issues raised by the parties in the motions to dismiss. Main Street asserts that this case should be dismissed because Bearse's claim is barred by the statute of limitations for fraud; because Bearse failed to satisfy the strict pleadings requirements of Fed.R.Civ.P. 9(b); and because Bearse failed to allege any actionable fraud. For the reasons set forth below, the Court rejects these contentions.

## B. Statute of Limitations

The alleged misrepresentations relating to the 1994 offering of mortgaged-backed bonds occurred in February or March 1994—more than six years before the complaint was filed. Complaint, ¶¶ 22—23. Consequently, Main Street argues that the fraud count against Main Street must be dismissed because it is barred by Florida's four year statute of limitations. Main Street is mistaken.

Florida's statute of limitations for fraud begins running either at the time the plaintiff learned of the fraud, or at the time when the plaintiff, exercising due diligence, reasonably *should have* learned about the facts giving rise to the fraud claim. Here, Bearse alleges that he discovered the fraud perpetrated against him when he received the August 29, 1996 Cox letter stating that no more payments would be made. Complaint, ¶ 4. It is uncontested that, until the August 29, 1996 letter, Bearse had received regular interest payments. Because interest payments were being received, Bearse knew of insufficient facts to give rise to a fraud claim even though Bearse may have suspected earlier that there were problems with his investment. Construing allegations in the complaint in a light most favorable to the non-movant, Bearse timely filed his com-

plaint within the four years following the receipt of the August 26, 1996. *See Jones v. Childers*, 18 F.3d at 899, 907.

### C. Rule 9(b) and Pleading a Fraud Cause of Action

Main Street argues that Bearse's fraud claim fails to meet the particularity requirements of Fed.R.Civ.P. 9(b), and also fails to state a claim for fraud under Florida law. The Court disagrees.

■ Bearse alleges that Norman told Bearse that the Bonds were secure because of the value of the property. Complaint, ¶ 22. The Prospectus states that Robert G. Beaumont appraised the church land and buildings at $2,200,000. Prospectus at 18. Bearse claims that the value of the land and buildings as represented in the Prospectus was false, and that the property's true value was $650,000—not $2,200,000. Complaint, ¶ 24. Bearse claims that the defendants misstated the value of the property by more than $1,000,000. Bearse's fraud claim sufficiently meets the pleading requirements of Fed.R.Civ.P. 9(b). Bearse complaint clearly answers the questions of "who, where, when, how, and why." Main Street can make no mistake about the statements it allegedly made—the essence of the specificity requirements of Fed.R.Civ.P. 9(b).

■ Bearse's fraud claim also survives the motions to dismiss. At this juncture, this Court must accept Bearse's allegations as true—*i.e.*, that the defendants intentionally misrepresented the value of the property in the Prospectus, knowing that the property's real value was $650,000, not $2,200,000. Bearse also states that he relied on this material statement when investing in the mortgaged-backed bonds; that the misrepresentations proximately caused Bearse to lose his investment in the bonds; and, that he has been damaged in the amount of $700,000. Bearse has alleged an actionable misrepresentation of material fact with the required specificity.

### IV. *CONCLUSION*

For the foregoing reasons, it is

**RECOMMENDED** that the district court order Frederick Bearse to file and serve a written response to the Court's inquiries regarding the Trust within ten days of the district court's order. It is

**FURTHER RECOMMENDED** that Main Street Investments' Motion to Dismiss (Doc. No. 49) and John Norman's Motion to Dismiss (Doc. No. 52) be **DENIED**.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.